Richard KERSEY and Delores Jean Kersey, Plaintiffs-Appellants,

v.

Samuel HARBIN, W. L. Clayton, Albert Holmes, Jr., Webb Edwards and Mary Mather, Defendants-Respondents.

No. 10801.

Missouri Court of Appeals, Southern District, Division 3.

Dec. 18, 1979.

Stephen N. Limbaugh, Limbaugh, Limbaugh & Russell, Cape Girardeau, for plaintiffs-appellants.

David E. Blanton, Blanton, Rice, Sickal, Gilmore & Winchester, Sikeston, for defendants-respondents.

HOGAN, Judge.

The legal aspects of this tragedy are before this court for a second time. On March 5, 1974, plaintiffs' son Daniel was an eighth grade student in the Sikeston, Missouri, Junior High School. Daniel was not quite 14 years old. At 2:40 p. m., Daniel reported to his regularly scheduled physical education class. His regular instructor was absent that day attending a "health workshop" in Cape Girardeau, with the permission of his superior. Mr. Clayton, the principal, had arranged for Mr. Holmes, another instructor, to teach both classes. Mr. Holmes regularly taught a physical education class of eighth and ninth graders in the school gymnasium, as did Daniel's usual instructor, Mr. Edwards. Normally, the two classes met at the same time, shared the locker room adjacent to the gym and exercised in the same gym, but each class had a separate teacher.

By deposition, Mr. Clayton testified he had discussed combining the two classes with Mr. Holmes and Mr. Edwards; both Holmes and Edwards assured Clayton the combination would create no difficulty. There is some evidence of a state administrative policy against assigning more than 45 students to any particular physical education instructor. Mr. Holmes and Mr. Edwards indicated that there were 20 to 25 students in each of the classes which were combined, but the size of the combined class is not definitely established by the record; Mr. Clayton, Mr. Holmes and Mr. Edwards alluded to the existence of "grade books" from which an accurate roll could be prepared, but these books were not produced.

On the afternoon of Daniel's fatal injury, Mr. Holmes departed from his usual routine. Holmes' usual practice was to remain in the locker room while his gym class dressed in order to prevent horseplay and to make sure stragglers left the locker room. As each student dressed, he would move onto the gym floor. On this occasion, Holmes departed from his usual practice by instructing his own class to go from the locker room onto the floor of the gym; Daniel's class was told to remain in the locker room until all were dressed, then go out to the gym together. Holmes did this to imitate Mr. Edwards' practice.

Mr. Holmes remained in the locker room to follow the last students into the gym. As Daniel went from the locker room into the gym, he was injured. The record contains no eyewitness account of the incident, but Mr. Clayton inquired after the fact. Mr. Clayton's inquiry indicates that as Daniel and another student, Steve Sims, were going through the hallway leading to the gymnasium, Sims began stepping on the heels of Daniel's shoes. Daniel thereupon "elbowed" Sims in Sims' genitals. Sims then picked Daniel up and Daniel either fell or was dropped on the floor.

Daniel requested and obtained permission to see the school nurse. The nurse, Mrs. Mather, found no apparent sign of extreme injury, and permitted Daniel to return to his gym class. He became worse; he returned to the nurse's office and Mrs. Mather summoned either one or both of his parents. Daniel was taken to his physician and expired shortly thereafter. An autopsy revealed Daniel had sustained a skull fracture; on the record, his death seems to have been caused by massive cerebral hemorrhage.

Thereafter the plaintiffs commenced a wrongful death action against Samuel Harbin, Superintendent of Public Schools at Sikeston; W. L. Clayton, principal of the junior high; Albert Holmes, Jr., and Webb Edwards, the two instructors involved, and Mary Mather, the school nurse. The trial court sustained defendants' motions to dismiss on several grounds. On appeal this court concluded, in a rather unsatisfactory opinion, that the action was a "disfavored" action, the pleadings were insufficient, but reversed and remanded the cause to allow plaintiffs an opportunity to amend their petition. *Kersey v. Harbin*, 531 S.W.2d 76 (Mo.App.1975).

After remand, plaintiffs filed an amended petition in several counts. Defendants severally filed motions to dismiss the action. Interrogatories were propounded to the plaintiffs and their verified answers were filed. The depositions of all the parties were taken. The trial court took up the motions to dismiss, the depositions were opened and filed, and the motions were taken under advisement. The motions to dismiss were denied; defendants thereupon filed answers and separate motions for summary judgment. The plaintiffs filed an opposing affidavit.

On March 8, 1977, defendants' motions for summary judgment were called. Counsel presented arguments and the motions were taken under advisement. On August 29, 1977, the trial court entered a judgment granting the motions for summary judgment each and severally. Plaintiffs appealed from the judgment, but in this court they have assigned error only to the entry of summary judgment in favor of defendants Harbin, Clayton and Holmes. The appeal as against defendants Edwards and Mather must therefore be deemed aban-

doned. *Charles Palermo Co., Inc. v. Wyant,* 530 S.W.2d 15, 17[1] (Mo.App.1975); *Komanetsky v. Missouri State Medical Association,* 516 S.W.2d 545, 549[1] (Mo.App. 1974).[1] We are therefore concerned only with the summary judgments entered against defendants Samuel Harbin, W. L. Clayton and Albert Holmes.

The "ground rules," so to speak, governing entry of a summary judgment against a plaintiff in a tort case have been so often stated it is unnecessary to restate them at length. Rule 74.04(h), V.A.M.R., states: ". . . In no case shall a summary judgment be rendered on issue [sic] triable by jury . . . unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law." Aside from noting that federal decisions construing Fed.R.Civ.P. 56 are regarded as persuasive in Missouri, *Cooper v. Finke,* 376 S.W.2d 225, 228[1] (Mo.1964), we need not repeat or expand what was held in *Pagan v. City of Kennett,* 427 S.W.2d 251, 252–253 (Mo.App.1968). The only other preliminary matter to be noted is that the depositions offered and received in the proceeding for summary judgment are prefaced by the following stipulation:

> "It is stipulated and agreed that depositions may be taken by Stenograph and transcribed; *that [any and] all . . . objections, excepting as to the form of the question, may be made at the trial;* and it is further agreed that the signatures of the witnesses may be waived." (emphasis added)

The relevant charges of negligence against defendants Harbin, Clayton and Holmes may be briefly summarized as follows: defendants Harbin and Clayton are charged with actual or constructive knowledge of quarrelsome propensities on Sims' part and with negligence in directing Daniel's usual instructor to be elsewhere on March 5, 1975; negligent failure to provide a substitute for the regular instructor; fail-

ing to take appropriate measures to prevent injury by Sims to other students, particularly Daniel, and leaving an eighth grade physical education class composed of 20 to 25 male students unsupervised in a gymnasium without a teacher. Mr. Holmes was charged with negligence in failing to keep the two physical education classes under direct supervision at all times; the petition further avers that Mr. Holmes had actual or constructive knowledge of Sims' propensity for ". . . causing disturbances and . . . fighting, agitating and arousing his fellow students in ways likely to cause harm to other students," and in failing, in light of that knowledge, to take proper measures to avoid fighting in the class. The questions for decision here are: 1) whether the petition states a claim upon which relief can be granted, and 2) whether it appears, considering the evidence in the light most favorable to the plaintiffs, defendants have shown by unassailable proof they are entitled to judgment as a matter of law.

■ In arguing that their motions to dismiss should have been granted, the defendants contend that as officers of the school district, they are clothed with a species of immunity and cannot be held liable except for commission of an intentional tort. We reject this argument, but in view of our prior opinion, a word of explanation is called for. Our analogy to "disfavored causes" was unfortunate, but it was based upon the implications of *Baker v. Owen,* 395 F.Supp. 294, 302–303[9–10] (M.D.N.C.1975), aff'd 423 U.S. 907, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). *Baker* dealt directly with the constitutionality of a statute, but implied that a public school student's interest in bodily security was subject to Eighth and Fourteenth Amendment protection. The decision strongly suggested that an instructor could admonish unruly students, but could do little else without a *prior* hearing,

---

1. The death of defendant Mather has also been suggested, and no motion for substitution has been made in this court. Inasmuch as the appeal as against defendant Mather has been abandoned, no order of dismissal as to her is

necessary; it is sufficient to note that in the circumstances, the action does not abate as to the other parties. *Roy v. Landers,* 467 S.W.2d 924, 924–925[1] (Mo.1971).

regardless how counsel for the appellants may have read the decision. The uncertainty created by *Baker* has been dispelled, to some degree, by the majority holding in *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). We will reiterate that we have found no rule of law, no line of authority, which clothes any of the defendants with immunity from liability for his negligent acts. What *Smith v. Consolidated School Dist. No. 2,* 408 S.W.2d 50 (Mo.banc 1966), actually held, we are now convinced, is that the scope of the supervisory duty is very narrow. Defendants' obligation was to exercise ordinary care to supervise the children, or in the case of defendants Harbin and Clayton, to exercise ordinary care to see that they were supervised. They were not insurers of the students' safety. *Clark v. Furch,* 567 S.W.2d 457, 458[2] (Mo.App.1978). Insofar as the arguments suggest the school district itself is immune, we agree, Laws of Mo.1978, p. 983, H.B.1650, § 1, and see *State ex rel. Allen v. Barker,* 581 S.W.2d 818, 824–825[8][9] (Mo.banc 1979), but the liability of the district itself is not in issue.

■ A further consideration in this connection is that a pleading should not be adjudged insufficient, as against a motion to dismiss, if the averments of the petition, accorded every reasonable and fair intendment, state a claim which can call for the invocation of principles of substantive law which may entitle the plaintiff to relief. *Boyer v. Guidicy Marble, Terrazzo & Tile Co.,* 246 S.W.2d 742, 744[1] (Mo.1952); *Ingalls v. Neufeld,* 487 S.W.2d 52, 54[4] (Mo. App.1972). We believe, and hold, that the motions to dismiss were properly denied.

The other question for decision is more difficult, but, with deference to the trial court, for whose judgment we have only the highest respect, we are convinced the motions for summary judgment were improperly granted. The defendants argue that because the content of the depositions and interrogatories was not negated by an affidavit made on personal knowledge and setting forth facts admissible in evidence, the evidence showing defendants' want of constructive knowledge of Sims' reputation for fighting stand admitted as true. Emphasis is placed on the language of Rule 74.04(e), which provides, in material part:

"When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

■ Defendants contend, as we understand them, that because the plaintiffs' responsive affidavit, their answers to interrogatories and the depositions, do not set forth facts admissible in evidence showing there is a genuine issue of fact, and do not show that plaintiffs are competent to testify to those facts, the summary judgments must stand. We are generally familiar with the principle invoked, *First National Bank of Liberty v. Latimer,* 486 S.W.2d 262, 266[1] and n.1 (Mo.1972), and we agree that the responsive affidavit filed by the plaintiffs is defective, but even so, defendants' proof must be "unassailable" if the judgments are to be sustained. *Cf. Bently v. Wilson Trailer Co.,* 504 S.W.2d 277, 278[3] (Mo.App.1973). And, to reiterate, this court departs from its usual stance in reviewing the evidence; it is most strongly construed *against* the result reached. *Wood v. James B. Nutter & Co.,* 416 S.W.2d 635, 636[1] (Mo.1967); *Cooper v. Finke, supra,* 376 S.W.2d at 228[2]; *Otto v. Farmers Ins. Co.,* 558 S.W.2d 713, 715[1] (Mo.App.1977). In our opinion, defendants' proof is not "unassailable" and material issues of fact remain.

The charge of negligence against Harbin and Clayton are, in substance, that they left a large class insufficiently supervised. Looking to the depositions, which were received for the purpose of ruling on the motions for summary judgment, we find that Clayton testified that Mr. Edwards' and Mr. Holmes' classes, combined, were "numberwise . . . a small group that

normally one person could very easily handle." Clayton further testified that the State Department of Education's "guideline" suggests no physical education instructor should be given more than 45 students to supervise. Mr. Clayton took the regulations as being "advisory," and we find nothing in the books which indicates the contrary is true. Clayton gave as his opinion that it "seemed" to him discipline was not as difficult in a physical education class as in a classroom. Clayton knew Sims, Daniel's classmate, but was "not aware" of any problems that other instructors had had with him.

Mr. Harbin, by deposition, testified that at Daniel's funeral, he had told the plaintiffs that Sims "had been in trouble before," but upon checking had found that "Simms had been talked with by administrators and classroom teachers [on] a few occasions, but [the records] would also indicate in [Harbin's] opinion that he was not a vicious, violent student." Harbin also testified that principals are given substantial discretion concerning the size of a particular class to be entrusted to a single instructor.

There is no record proof which indicates, one way or another, whether Daniel's injury was an isolated incident or part of a pattern of dangerous activity; as we shall see, there is no admissible account of the manner in which Daniel sustained the injury.

The record proof, which we have synopsized for brevity, is insufficient to sustain the summary judgments entered for defendants Clayton and Harbin. The liability of supervisory school employees for failure to provide adequate supervision is a peculiarly subjective matter, but establishing compliance with the State Commissioner of Education's standards concerning the size of the class is not conclusive upon the issue of defendants' liability; compliance with a legislative enactment or an administrative regulation does not preclude a finding of negligence where a reasonable man would take additional precaution. Restatement (Second) of Torts, § 288 C and Comment a (1965); see also W. Prosser, Torts, § 35 at

205 (3rd ed. 1964). Neither is the evidence that defendants Clayton and Harbin lacked constructive knowledge of Sims' assaultive propensities, if any, conclusive on the issue of negligence vel non in failing to assign a teacher to each class.

Defendant Holmes, as indicated, was charged with negligent failure to supervise the two classes assigned to him. The record is not sufficient to entitle him to a summary judgment because it contains no admissible account of the manner in which Daniel was injured. Mr. Holmes had started his class, "started doing our exercises," when Daniel said he had a headache and was sent to see Mrs. Mather, the school nurse. In response to the question "Do you recall asking him anything?", Mrs. Mather answered at length including in her answer the observation that Daniel had said he was in a scuffle. Defendant Clayton voluntarily related Daniel's account of the accident in response to the question "Where was [Daniel] when you talked with him?" Mr. Clayton related Sims' version of the incident in response to the question "Did you have any occasion to talk with any of the other boys after[ward] as to what happened?"

The rule invoked by the defendants to support their contention that the plaintiffs' responsive affidavit was insufficient, and to support their argument that the plaintiffs' answers to interrogatories were insufficient to show a genuine issue of material fact is a rule of general application. Hearsay may not be relied upon either to avoid or support a summary judgment. *Broadway v. City of Montgomery, Alabama*, 530 F.2d 657, 660–661 (5th Cir. 1976); *Daily Press, Inc. v. United Press International*, 412 F.2d 126, 133[3] (6th Cir. 1969); *Morrissey v. Proctor & Gamble Company*, 379 F.2d 675, 677 n.2 (1st Cir. 1967). By stipulation repeated with emphasis above, both parties had retained the right to make "any and all objections, excepting as to the form of the question" at the trial. None of the questions which elicited voluntary hearsay necessarily called for the witness to answer with hearsay; an objection that the question called for hearsay would

have been premature. We are aware that errors and irregularities in the form of the questions and answers may be waived under Rule 57.07(d)(3)(B), V.A.M.R., but in the face of the parties' stipulation, it cannot be said there was any such waiver here.

We will repeat that the tort liability of supervisory public school employees and teachers for inadequate supervision of their students is highly subjective, and the scope of their duty is extremely narrow. Nevertheless, we do not find the defendants to be immune, and we cannot say that in the absence of admissible evidence showing the circumstances or the manner in which Daniel was injured, defendants have shown by "unassailable proof" that they are entitled to judgment as a matter of law.

As to defendants Edwards and Mather, the summary judgments must be affirmed. As to defendants Harbin, Clayton and Holmes, the judgments are reversed and the cause is remanded.

FLANIGAN, C. J., and BILLINGS, J., concur.