Roger PORTER, Plaintiff-Appellant,

v.

CRAWFORD & COMPANY, Defendant-Third Party Plaintiff-Respondent,

and

CARRIERS INSURANCE COMPANY, Defendant-Third Party Plaintiff-Respondent,

v.

NATIONAL BANK IN NORTH KANSAS CITY, Third Party Defendant-Respondent.

No. WD31205.

Missouri Court of Appeals, Western District.

Dec. 2, 1980.

Motion for Rehearing and/or Transfer Denied Feb. 2, 1981.

Application to Transfer Denied March 9, 1981.

Robert Ernest Gould, Gould & Moore, Kansas City, for plaintiff-appellant.

John L. Hayob, Niewald, Risjord & Waldeck, Kansas City, for Crawford & Co.

Phillip S. Smith, Jr., Merrick, Beamer, Wells & Slagg, Kansas City, for Carriers Ins. Co.

S. Preston Williams, and Thomas E. Barzee, Jr., North Kansas City, for National Bank.

Before WASSERSTROM, C. J., and DIXON and SOMERVILLE, JJ.

DIXON, Judge.

Plaintiff appeals from an order of the trial court sustaining motions to dismiss both counts of plaintiff's action with the collateral effect of the dismissal of the cross-claims against the third party defendant pleaded by defendants under the doctrine of *Missouri Pacific Railroad Company v. Whitehead and Kales Co.*, 566 S.W.2d 466 (Mo.banc 1978).

The principal issue to be resolved is whether or not the law of Missouri will permit a recovery in tort for a lawful act performed maliciously and with the intent of causing harm to a plaintiff.

The scope of review of the motions to dismiss requires an examination of the pleadings allowing them their broadest intendment, treating all facts alleged as true, construing the allegations favorably to plaintiff, and determining whether, upon that basis, the petition invokes principles of substantive law. *Shapiro v. Columbia Union National Bank and Trust Co.*, 576 S.W.2d 310 (Mo.banc 1978). A pleading will not be adjudged insufficient upon a motion to dismiss if the allegations of the petition accorded a reasonable and fair intendment state a claim which can call for the invocation of principles of substantive law which may entitle the plaintiff to relief. *Kersey v. Harbin*, 591 S.W.2d 745 (Mo.App.1979).

The conceded factual background which gave rise to the filing of plaintiff's petition

against both defendants may be briefly stated. Plaintiff had sustained damage in an automobile collision involving a motorist insured by defendant Carriers Insurance. Crawford & Company, acting as the agent and adjuster for Carriers, settled the plaintiff's claim and delivered a draft in exchange for a full release of the plaintiff's claim against the other motorist. The plaintiff deposited the draft in the National Bank in North Kansas City, third party defendant here, and upon the basis of that deposit, wrote checks on plaintiff's account. Carriers had, unbeknownst to the plaintiff, stopped payment on the draft; and, as a consequence, the plaintiff's checks were returned to the payees as being drawn against insufficient funds, and the bank subsequently assessed service charges in connection with those insufficient funds checks.

Reduced to its essentials, Count I of plaintiff's petition pleads that Carriers "without having given any notice to plaintiff and for no cause or reason attributable to plaintiff, and without just cause or reason, stopped payment, ... said acts were done and committed by defendant in careless and reckless disregard of the rights of plaintiff and with intent to injury [*sic*] plaintiff ... that the acts and omissions of defendant [Carriers] were wilful, wanton, and malicious." Count I of the petition then sets forth a claim of damage by reason of the late charges and embarrassment, humiliation, and reputation damage. The prayer of that count of the petition is for both actual and punitive damages.

Count II of the petition is directed against defendant Crawford and, by incorporation, restates the allegations against defendant Carriers. It then asserts that the defendant Crawford had knowledge of the intention of the defendant Carriers to stop payment on the draft and knowledge that a "failure to notify" would cause plaintiff harm and then alleges that possessed of said knowledge, Crawford, with the intent to cause actual injury and damage, wilfully and knowingly failed to notify plaintiff of the act of Carriers in stopping payment. The petition in this Count alleges plaintiff

was caused to suffer great embarrassment, humiliation, and anxiety, and his reputation and standing in the community have been damaged.

Subsequent to the filing of answers by the two defendants, both defendants brought a cross-claim against the National Bank. The cross-claims assert that if the plaintiff sustained any injury or damage as a result of the negligence of the defendants Carriers and Crawford, that the negligence of the defendant National Bank contributed to cause said injury or damage. The cross-claim further asserts that the defendant National Bank should contribute on a proportionate basis to any judgment against defendants. The cross-claim is patently premised upon the doctrine of *Whitehead and Kales, supra.*

The defendant Carriers and the defendant Crawford filed separate motions to dismiss which were sustained, and the trial court dismissed the third party petition on the stated assumption that it was contingent upon the validity of plaintiff's petition.

The colloquy between counsel and the court demonstrates that the trial court dismissed the petitions on the specific ground stated in the motions. The specific ground set forth in the motion was that the petition was an action "sounding in negligence" premised on the defendant's failure to notify plaintiff of the act of stopping payment. The most casual glance at the petition reveals that it pleads *intentional acts*. The trial court action might be upheld if the pleading "sounded in negligence" because there is no affirmative duty on the part of defendants to notify the plaintiff of the stopping of payment existing under § 400.-4–403 RSMo 1978, nor have the parties suggested any other basis for the creation of such a duty.

The petition, however, states that the defendant's actions were intentional for the sole purpose of harming plaintiff. It must, therefore, be determined if the catchall phrase of the motions, "[T]here exists no claim or cause of action against this De-

fendant under the facts pleaded," requires affirmance of the trial court's order.

Plaintiff, on this appeal, concedes no cause of action in negligence exists but asserts that the trial court erred in dismissing his petition because the allegations of the petition plead a wilful tort. The plaintiff characterizes the tort pleaded as a wilful intentional tort based on the "prima facie tort doctrine." Carriers and National Bank respond in separate briefs by asserting the "prima facie tort doctrine is not the law of Missouri." They further argue the plaintiff has failed to allege specific damages which they assert is required under the case law of the jurisdictions recognizing that theory of tort liability. The briefs contain no extensive analysis or citation to the voluminous writing on the theory nor the cases applying the concept. Plaintiff cites 74 Am.Jur.2d *Torts* § 38 and 16 A.L. R.3d 1191, and defendant Carriers cites one lower court case from New York on the damage issue. Defendant Crawford & Company's brief ignores the issue.

To facilitate the discussion, a statement of the elements of this theory of tort liability will be stated in summary form as gleaned from the sources to be later discussed. The elements so summarized are:

1. Intentional lawful act by the defendant.
2. An intent to cause injury to the plaintiff.
3. Injury to the plaintiff.
4. An absence of any justification or an insufficient justification for the defendant's act.

The defendants do not claim that the plaintiff's petition does not allege the elements of the prima facie tort doctrine aside from their assertion with respect to the lack of specific pleading of damages and it is, in effect, conceded by them that the petition pleads the essential elements of that doctrine.

The question is thus squarely presented as to whether or not Missouri will undertake to recognize a recovery upon the basis of an intentional tort under the principles of the case law in other jurisdictions developing what has been styled, "the prima facie tort doctrine."

Prima facie tort doctrine is a result of a controversy that has been waged for generations among the legal scholars with respect to the fundamental concept of tort liability. The dispute and citation to its protagonists are set forth in Forkosch, *An Analysis of the "Prima Facie Tort" Cause of Action*, 42 Cornell L.Q. 465 (Summer 1957). The article traces the analysis by the scholars.

In the early development of tort law, it was assumed that the only tort liability which could be recognized was tort liability arising within the framework of one of the specific trespass writs. Maitland, *The Forms of Action at Common Law*, pp. 4–5 (1941); Forkosch, *supra*, n.2, p. 465. Scholarly research has indicated that this was a misconception and that the early common law recognized the flexibility of trespass on the case to deal with other forms of tort action not specifically included in the traditional trespass writs. Maitland, *supra* at 66.

There is no need to detail the long and convoluted history of the dispute over the nature and function of the tort law. It is clear that modern scholarship considers that there exists a residue of tort liability which has not been explicated in specific forms of tort action and which is available for the courts to develop as common law tort actions as the needs of society require such development. Brown, *The Rise and Threatened Demise of the Prima Facie Tort Principle*, 54 Northwestern L.R. 563, 573 (1959–1960). The emerging products liability recovery theories and the relatively recent development of theories in the recovery of damages for intentional infliction of emotional distress are demonstrative of the willingness of the courts to draw upon traditional concepts of tort liability and impose liability in new forms and under new factual situations.

The Restatement (Second) of Torts, in § 870, has stated a guide for the development of new forms of intentional tort, expressed a rationale for imposing such liabili-

ty and provided guidelines for the imposition of such liability. The Restatement, however, stops short of defining a specific tort of general application.

The origin of the prima facie tort doctrine in the United States is found in *Aikens v. Wisconsin*, 195 U.S. 194, 25 S.Ct. 3, 49 L.Ed. 154 (1904). In that case, Justice Holmes conceptualized the tort in the following language: "Prima facie, the intentional infliction of temporal damages is a cause of action which as a matter of substantive law, whatever may be the form of the pleading, requires a justification if the defendant is to escape." Other language in that case gave rise to the notion of "disinterested malevolence" as characterizing the motivation for conduct justifying the imposition of tort liability. By that phrase, Justice Holmes looked to the ordinarily lawful conduct and indicated that if conduct otherwise lawful was not done to achieve a beneficial end for the actor but was done solely with a malevolent intent to injure the plaintiff, the conduct became actionable.

The case law development clearly has tempered the requirement that an act be totally malevolent before it became actionable. This is based in part upon criticism that disinterested malevolence and justification represent a contradiction. The argument is that a wholly malevolent act can never be justified and that a purpose other than malevolent desire to injure the plaintiff is, in itself, a justification for the act. Forkosch, *supra* at 474. G. Alexander, Commercial Torts, Chapter 6 (1973).

Thus, the modern authority seems to agree that what is involved in the two concepts of malevolence and justification is that the plaintiff's cause of action must include proof of an actual intent to injure and if another purpose appears in the actor's conduct which amounts to a justification, then the wrongful act and the justification will be weighed to determine whether the justification in terms of societal value outweighs the wrongful motive of the defendant in attempting injury to the plaintiff.[1]

Justice Holmes' opinion in *Aikens, supra,* is often cited as the seminal case in the field of intentional tort in the performance of a lawful act. *Aikens,* however, but reflects the earlier opinions of Justice Holmes when he was sitting as a member of the Massachusetts court. Justice Holmes developed the doctrine in a very early line of Massachusetts cases. *Moran v. Dunphy,* 177 Mass. 485, 59 N.E. 125 (1901); *Plant v. Woods,* 176 Mass. 492, 504, 57 N.E. 1011, 1015 (1900) (dissenting opinion); *Vegelahn v. Guntner,* 167 Mass. 92, 104, 44 N.E. 1077, 1079 (1896) (dissenting opinion). Holmes, in *Privilege, Malice, and Intent,* 8 Harv.L.Rev. 1 (1894), provides the theoretical underpinning for the Massachusetts decisions and ultimately for *Aikens, supra.* Even those early Massachusetts cases had a sound basis in the English authority for the development of the doctrine. The most frequently cited English case is *Mogul Steamship Co. v. McGregor Gow & Co.,* 23 Q.B.D. 598 (1889), *affirmed* A.C. 25 (1892); but it, too, rests upon earlier cases developing the doctrine from a theoretical basis to applications in the case law. The English cases, no doubt, were strongly influenced by the Statute of Westminster, the Second:

"let a writ be made by those learned in the law so that for the future it shall not befall that the court fail in doing justice to complaints." 13 Edw. I, c. 24 (1285) (Plucknett trans.).

The general sense of the great English statute referred to exists in our own organic law in Mo.Const. Art. I, § 14, "certain remedy for every injury to person, property or character." A case resting the theory of recovery in tort for alienation of affections resulting in loss of support by plaintiff children upon the broad ground of a similar provision of the Illinois Constitution, Art. 2, § 19, is *Daily v. Parker,* 152 F.2d 174 (7 Cir. 1945). The theory of liability does not rest alone upon the theoretical basis and ancient

---

1. Restatement (Second) of Torts, § 870, Comment C, p. 280 (1977); 42 Cornell L.Q., *supra* at 472.

authority thus far discussed. The cases prior to 1965 are collected in Annot., 16 A.L.R.3d 1191 (1967). Some discussion of the modern authority will serve to focus the issue in the present case.

Despite the early development of the Massachusetts law, the leading modern authorities arise in New York. Other states have, in part, adopted similar theories but in no state other than New York has the doctrine been developed with such care.

Many of the nominative tort theories, such as trespass, now rigidly defined, were evolved on a case-by-case basis. The development process tends to produce some confusion and uncertainty as to the courts' struggle with new and different fact settings and as the circumstances and ingenuity of counsel raise new issues for resolution. The history of the development of the prima facie tort doctrine is a classic example of that developmental process. The early adoption of the prima facie tort theory in New York and the willingness of the New York courts to recognize and confront the issues presents an unusual opportunity to vicariously assess the whole ambit of issues involved in the development and application of the theory.

The early cases in New York adopted the doctrine along the lines of *Aikens* and the Massachusetts cases. *Ruza v. Ruza*, 286 App.Div. 767, 1 A.D.2d 669, 146 N.Y.S.2d 808 (1955); *Al Raschid v. News Syndicate Co.*, 265 N.Y. 1, 191 N.E. 713 (1934); *Beardsley v. Kilmer*, 236 N.Y. 80, 140 N.E. 203 (1923). Apparently fearful of expansion of tort liability beyond reasonable bounds, the New York courts devised limitations upon the doctrine. *Sheppard v. Coopers', Incorporated*, Sup., 156 N.Y.S.2d 391 (1956), *affmd.* App.Div., 157 N.Y.S.2d 898 (1956). Those limitations, upon further analysis and consideration, have been largely eliminated, or at least made less restrictive than the early statements of them would suppose. An early limitation—that the doctrine would not support a cause of action if the facts would also support a nominative tort—has been largely dispelled by the analysis which suggests that under modern pleading, alternative and even contradictory theories may be pleaded. *Board of Education, etc. v. Farmingdale Classroom Tchrs.*, 38 N.Y.2d 397, 343 N.E.2d 278, 380 N.Y.S.2d 635 (1975).

New York case law at one point also restricted the doctrine to cases where malice was the sole motivation for the acts complained of by the plaintiff. *Reinforce, Inc. v. Birney*, 308 N.Y. 164, 124 N.E.2d 104 (1954), but in *Farmingdale Classroom Tchrs., supra*, the New York Court of Appeals found the pleading sufficient and left to the proof in the case the balancing of the defendant's motivation in performing the act causing the injury (the evidence of bad motive) against the claim of justification of the act. The notion of the need to prove maliciousness as a sole motivation is subject to the same criticism as Justice Holmes' "disinterested malevolence not otherwise justified;"—an act wholly malicious cannot be justified.

The Restatement (Second) of Torts (1977) has resolved the issue on the basis of a balancing of interests. The plaintiff must allege and prove bad motive on the part of the defendant. The defendant may plead and prove any justification. The court first must weigh and consider the balance of social values to determine if the defendant's acts are tortious. This balancing reflects the traditional role of the court in the direction of a verdict. Ultimately, the jury must balance the bad motivation of the defendant against the claimed justification for the act. Restatement (Second) of Torts § 870, Comment E, pp. 281–283, Comment K, p. 286 (1977). That position is consistent with the general principle underlying the statement of the doctrine. "Tort law involves a balancing of the conflicting interests of the litigants in the light of the social and economic interests of society in general." Restatement (Second) of Torts § 870, Comment C, p. 280 (1977).

A great many cases in New York have turned on the issue of the necessity for pleading "special damages." The cases are collected in Annot., 16 A.L.R.3d 1175 at p. 1215 (1967).

■ The general rule is that "general damages" are those that flow as a natural and necessary result of the act complained of and that "special damages" are damages which actually result from the act by reason of the special circumstances of the case and not as a necessary result of the act. Special damages may be pecuniary, but not inevitably so. 22 Am.Jur.2d *Damages* § 15, p. 31; *Travelers Indemnity Company v. Chumbley*, 394 S.W.2d 418 (Mo.App.1965).

■ As *Chumbley* notes, "Damages both general and special constitute but a single element, albeit a necessary one, of a tort." The courts in New York have not always followed the generally accepted distinction between general damages and special damages. Instead confusion has arisen because special damages have been equated with pecuniary loss and the New York cases cannot be reconciled with the general rule. Because the requirement of the pleading of special damages has been so troublesome in New York, some further discussion is needed on that issue.

The requirement that special damages be pleaded with particularity is no stranger to the law of torts. Libel and slander per se require no pleading of special damages, but where the words uttered or written require some additional factual matrix to demonstrate damage, it must be pleaded and proven. The requirement of some New York cases in the form that pecuniary damages must be pled and proven is erroneous as a misapplication of the general rule.

The rule vis-à-vis the general as opposed to special damages was intended to require more specific pleading when the claimed damage does not necessarily flow from the act complained of and not as a requirement of proof of pecuniary loss. The limitation of some New York cases of a requirement of proof of pecuniary loss was unquestionably imposed out of a concern that the lack of such a restraint might open the floodgate of litigation to meritless claim. That stricture has been criticised. 54 Northwestern L.R., *supra* at 570. The author of that article compares the stricture of the special damage rule in the field of prima facie tort liability to the use of the same restraint in defamation cases noting that its application in that field has been haphazard and discriminatory, 54 Northwestern L.R. at 571.

The Restatement (Second) of Torts has resolved the issue in § 870 by resorting to the definitions of "harm," "injury," and "damages," concepts established for all forms of recovery in tort. "Harm" is defined in Restatement (Second) § 7, p. 12 as "the existence of loss or detriment in fact of any kind." The word "injury" is defined by the same section as "the invasion of any legally protected interest of another." Comment A to § 7 Restatement (Second) of Torts makes it clear that "injury" may occur without "harm" and "harm" may occur with injury. "Harm" as so defined gives rise to a cause of action only when it results *from* the invasion of a legally protected interest, *i. e.*, "injury." Section 870 thus focuses upon "injury" as necessary before any cause of action arises under the prima facie tort doctrine. The earlier drafts of the Restatement contained language suggesting harm. The debate preceding the adoption of the present language of § 870, Restatement (Second) of Torts, makes it clear that the omission of harm and the inclusion of injury was intended to restrict the section's application to the invasion of a legally protected interest. 53 ALI Proceedings 64 (1976).

■ Upon the basis of this analysis, the rule as to pleading special or general damages can take its proper place. An "injury" as an invasion of a legally protected right may cause either general or special damages. If the former, no special pleading is required. If the latter, the pleading must set forth the factual matters that give reasonable notice of the nature and extent of the claim.

What has been said thus far should suffice to show that the notion of a tort action based on common law precepts is accurately described in Restatement (Second) of Torts § 870 (1977). It should also appear from the analysis that the stricture upon the doctrine of the New York case law requiring pleading and proof of pecuniary loss is not analytically sound.

The only remaining question is a policy question concerning the propriety of the adoption of such a theory of tort liability in Missouri.

■ There seems to be no sound reason based upon either precedent or policy why Missouri should not adopt the New York view. None of the principles relied upon in the evolution of the doctrine are foreign to our law. The concept is consistent with the mandate of our organic law that there should be a remedy for every injury. Mo. Const. Art. I, § 14. Missouri has not been reluctant to adopt new forms of action in tort based on Restatement principles. In *Annbar Associates v. American Express Co.*, 565 S.W.2d 701 (Mo.App.1978), the tort of injurious falsehood, a cause of action based upon § 623A Restatement (Second) of Torts, was recognized. *Corcoran v. Southwestern Bell Tel. Co.*, 572 S.W.2d 212 (Mo. App.1978), in analyzing a claim for invasion of privacy, relied upon Restatement (Second) of Torts § 652A. Our products liability cases have relied heavily on Restatement (Second) of Torts § 402A. *Keener v. Dayton Electric Manufacturing Co.*, 445 S.W.2d 362 (Mo.1969); *Blevins v. Cushman Motors*, 551 S.W.2d 602 (Mo.banc 1977); *Brawner v. Liberty Industries, Inc.*, 573 S.W.2d 376 (Mo.App.1978). Nor does such a tort require a name; *Annbar Associates, supra.*

The doctrine has been well developed in several states and Restatement (Second) of Torts § 870 has refined the principles of the case law into a workable guide for application of the doctrine. It must be concluded that, like New York and Massachusetts, as well as other states which have found support for the doctrine in common law principles, Missouri should adopt the Restatement view imposing such liability.

■ Applying this analysis to the instant case, the plaintiff's petition states a cause of action against the defendants Carrier and Crawford. As noted above, the defendants do not attack the pleading as deficient in stating a cause of action under the prima facie tort doctrine except for the assertion that there is no pleading of special pecuniary damages. The pleadings in the instant case, by asserting the pecuniary loss by reason of bank charges for returned checks, would satisfy the narrowest view of any of the case law discussing the issue of special damages. The pleading here need not rest on that narrow ground. In *Morrison v. National Broadcasting Co.*, 24 App.Div.2d 284, 266 N.Y.S.2d 406 (1965), in discussing the claimed act of the defendants in causing the innocent plaintiff to participate in a rigged television show, the court said: defendants never said of plaintiff that he was a cheat; they only caused him to appear to be one. The court had no difficulty in seeing that injury as comparable to the injury flowing from defamation and the damage as being general as opposed to special. In fact, the later ruling of the Court of Appeals, *Morrison v. National Broadcasting Co.*, 19 N.Y.2d 453, 227 N.E.2d 572, 280 N.Y.S.2d 641 (1967), found that the action was barred by the New York one year limitation for damages from defamation. The Court of Appeals, finding that since the damages were analagous to defamation damages, the legislative intent to limit recoveries for such damages by the one year statute of limitations required application of the limitations statute.

In the instant case, the analogy is clear. Under the pleadings, the defendants did not say the plaintiff was a bad check writer; they only caused him to appear to be one (the plaintiff alleges intentionally) to injure him in his reputation. Indeed, it is possible to read the *Morrison* opinions as eliminating or at least substantially weakening the requirements of special pecuniary damages in New York.

■ The concern implicit or expressed, that the creation of a new theory of tort liability pursuant to the guidelines of § 870 Restatement (Second) of Torts, will result in a flood of litigation, is unfounded. The burden of proof upon the plaintiff to show an intent to injure, not merely an intentional act, as well as the preservation of the right of the defendant to plead and prove a justification for the act, make it unlikely that the theory will be subject to abuse.

The defendant in the instant case may, of course, plead and prove any facts establishing a justification for the act of stopping payment on the draft. All that is determined here is that if the plaintiff proves what has been alleged, a submissible case is made. The proof of a justification by the defendants may either result in a directed verdict for the defendants or a jury verdict in their favor dependent upon issues of the nature of the proof and the credibility of the evidence, which cannot now be anticipated.

█ Since the resolution of the issues on this appeal, concerning the validity of plaintiff's petition in stating a claim, rest on theories of intentional tort, the trial court's dismissal of the claim by defendants Carriers and Crawford against National Bank in North Kansas City must be sustained. *Whitehead and Kales, supra,* is in terms limited to contribution between "negligent tortfeasors." The following language of *Whitehead and Kales* is dispositive of the issue:

> "Rather, the 'rule' in *Merryweather v. Nixan, supra,* is the exception, the true common law rule having been determined in Battersey's Case, Winch's Rep. 48 (Common Pleas 1623) that 'among persons jointly liable the law implies an assumpsit either for indemnity [described above] or contribution [shared liability] and the exception is that no assumpsit, either express or implied, will be enforced among wilful tortfeasors or wrongdoers.' Note, Contribution Between Persons Jointly Charged for Negligence—*Merryweather v. Nixan,* 12 Harv.L.Rev. 176, 177 (1898)." *Supra* at 469.

The ruling of the trial court dismissing plaintiff's petition against Carriers and Crawford is reversed; the judgment of the trial court dismissing the claim by Crawford and Carriers against the National Bank is affirmed; and the cause is remanded to the trial court with directions to reinstate plaintiff's petition against Carriers and Crawford.

## ON MOTION FOR REHEARING

### PER CURIAM:

Both Crawford & Company and Carriers Insurance Company have filed motions for rehearing and for transfer. Both continue to argue that there is no violation of a legal duty and thus there can be no cause of action because the defendants had a statutory right to stop payment on the check. Thus, the defendants continue to refuse to recognize the principle that the duty violated in any intentional tort is the duty to avoid intentionally causing harm to another without justification.

It is not the exercise of the lawful right to stop payment which creates the tort. The opinion shows that the *pleadings* in this case plead that the act was done with *intent to injure* and *without justification.*

The motions also refer to language of Judge Reynolds in *Loewenberg v. De Voigne,* 145 Mo.App. 710, 123 S.W. 99 (1909) to the effect that no amount of bad intent can render a lawful act actionable in damages. *Loewenberg* is a *contract* action, not one in tort; and the case turns on other deficiencies in the pleadings. The statement is thus dictum in *Loewenberg.* The concept embodied in the language in *Loewenberg* was reiterated by Judge Reynolds in a dissent in two later cases in the same court. In *Wilkerson v. McGhee,* 163 Mo. App. 356, 143 S.W. 1198 (1912), the dissent of Judge Reynolds relied on *Loewenberg, supra,* in a malicious prosecution case. The opinion in *Wilkerson* had adopted an earlier opinion of the Springfield Court of Appeals reported in *Wilkerson v. McGhee,* 153 Mo. App. 343, 134 S.W. 595 (1911). On transfer to the Supreme Court by reason of the dissent, *Wilkerson v. McGhee,* 265 Mo. 574, 178 S.W. 471 (1915), the court reversed on a different point, that plaintiff's own petition showed probable cause for the prosecution, and Judge Reynolds' dissent in the St. Louis opinion and *Loewenberg* are not cited.

In a later St. Louis case, *State ex rel. Journal Printing Co. v. Dreyer, et al.,* 183 Mo.App. 463, 167 S.W. 1123 (1914), the majority of the court awarded mandamus to require the granting of a publication con-

tract to relator on the grounds the contract had been given to a competing and higher bidder for improper motives of political preference. Judge Reynolds again dissented and cited the dictum from *Loewenberg*.

The language of Judge Reynolds in those early cases, never accepted by a majority of the court, does not affect the opinion in the instant case.

The motions for rehearing are overruled, and the motions to transfer are denied.