**GARY SURDYKE YAMAHA, INC., Plaintiff-Appellant,**

v.

**Carl DONELSON and Donelson Cycles, Inc., Defendants-Respondents.**

No. 51251.

Missouri Court of Appeals, Eastern District, Division One.

Nov. 24, 1987.

Motion for Rehearing and/or Transfer Denied Dec. 22, 1987.

Application to Transfer Denied Feb. 17, 1988.

Howard A. Wittner, Clayton, for plaintiff-appellant.

Gerard F. Hempstead, Clayton, for defendants-respondents.

SATZ, Presiding Judge.

Plaintiff, Gary Surdyke d/b/a Gary Surdyke Yamaha, Inc., sued defendants, Carl Donelson and Donelson Cycles, Inc., for prima facie tort. The trial court directed a verdict for defendants at the close of plaintiff's case. Plaintiff appeals. We affirm.

The issue before us is submissibility. Submissibility is a question of law. *E.g., Gibson v. Newhouse,* 402 S.W.2d 324, 327–328 (Mo.1966). To make a submissible case, plaintiff must support every element of his case by substantial evidence. *E.g., Probst v. Seyer,* 353 S.W.2d 798, 802 (Mo. 1962). We view the evidence and inferences in the light most favorable to plaintiff's case and disregard all contrary evidence and contrary inferences. *E.g., Howard v. Lundry,* 591 S.W.2d 193, 197 (Mo.App. 1979).

So viewed, plaintiff's evidence shows he owns and operates Gary Surdyke Yamaha, a motorcycle dealership. Carl Donelson (Donelson) owns and operates Donelson Cycles, Inc., also a motorcycle dealership. Plaintiff's dealership is located in Crystal City, Jefferson County, Missouri. Defendants' dealership has three stores, one in

north St. Louis County, one in south St. Louis County, and one in Flat River.

In 1981 and 1982, defendants placed ads in the Jefferson County Daily Rocket, a local newspaper in Jefferson County. The ads were "coupon ads"; i.e., customers could buy advertised motorcycles at or near dealer's cost if they presented the coupon at the time of purchase. The ads were placed in the Festus/Crystal City edition of the Rocket, which has a circulation of 9,000. They were placed only in the Rocket and in no other Jefferson County or St. Louis County paper.

Plaintiff testified the ads forced him to give customers the Donelson price or lose their business. He admitted other factors such as poor economic conditions also hurt his business. However, he believed the ads were an attempt by Donelson to put him out of business.

As a result of the coupon ads, Donelson made three sales, but he did not stop the ads until the time he was served this suit. Donelson did testify he had an inventory of 600 motorcycles which he needed to sell. He placed the ads, he said, to penetrate the Jefferson County market and to broaden his market. Nonetheless, he did not place these coupon ads in any other area other than the Crystal City/Festus area.

Plaintiff also called on Arthur Keido as a witness. Keido, apparently a friend of plaintiff, secretly tape-recorded conversations he had with two of defendants' salesmen. Allegedly, the substance of these conversations would tend to prove defendants' intent in placing the ads in question was to put plaintiff out of business. Plaintiff attempted to introduce these tapes and their transcript through Keido, as the sponsoring witness. Defendants repeatedly and consistently objected to this evidence as hearsay, which, defendants argued, was not made admissible as admissions because plaintiff made no showing the salesmen were authorized by defendants to make the statements in question. The trial court sustained defendants' objections and rejected plaintiff's subsequent offer of proof.

On appeal, plaintiff argues the statements of the salesmen were admissible as admissions of defendants. We disagree.

Statements of employees may be admissions of the employer if the employee is acting within the scope of his authority in making those statements. *Roush v. Alkire Truck Lines,* 299 S.W.2d 518, 521 (Mo. 1957). Normally, the scope of authority is established by the employer creating an appearance of power which leads third parties to believe the employee could communicate for the employer. *See, e.g., Rusk Farms, Inc. v. Ralston Purina Co.,* 689 S.W.2d 671, 678 (Mo.App.1985). *See also German v. Kansas City,* 512 S.W.2d 135, 145 (Mo. banc 1974) (employer had permitted employee to answer interrogatories). In Missouri, we have construed this exception narrowly, holding, at times, the employee or agent needs "executive capacity" for his or her statement to be within the scope of authority. *See, e.g., Missouri State Highway Commission v. Howard Construction Co.,* 612 S.W.2d 23, 26 (Mo. App.1981).

Here, plaintiff failed to show the salesmen had authority to make the statement in question. Plaintiff merely showed the salesmen were salesmen. There was no showing the salesmen took part in any advertising or marketing decisions nor was there a showing they were executives or acted in an executive capacity.[1]

Nor does plaintiff's offer of proof cure the defect. In his offer of proof, plaintiff merely states his conclusion the evidence would go directly to the issue of defendants' intent. (See Appendix) This does not lay any foundation showing the salesmen were authorized to make statements about defendants' reason for the ads in question. Plaintiff does make the general comments that the salesmen's statements were made in the "ordinary course of employment" and "there had been some testimony to the effect that there are no

---

1. This evidence may be admissible under the broader exceptions in the Federal Rules of Evidence, Rule 801(d)(2)(D), which plaintiff apparently relies upon.

limitations on what a salesman can say in selling motorcycles." Clearly, these general comments failed to show the trial court the admissibility of the salesmen's statements.

Later, twice during Keido's testimony, plaintiff attempted to supplement his offer of proof by making the tapes and their transcript part of his offer. The trial court was well within its discretion in denying this as untimely. Moreover, plaintiff has not demonstrated to us that the tapes themselves lay a proper foundation of authority for the salesmen to make the statements in question.

Plaintiff also argues he made a submissible case in prima facie tort and, therefore, he contends the trial court erred in directing a verdict in favor of defendants. We disagree.

We need not decide here the viability of the prima facie tort. We leave that decision where it belongs, with our Supreme Court. At present, our intermediate courts of appeal have accepted the prima facie tort, *see, e.g., Porter v. Crawford & Co.,* 611 S.W.2d 265 (Mo.App.1981); admittedly, with some reluctance. *See, e.g., Bandag of Springfield, Inc. v. Bandag, Inc.,* 662 S.W.2d 546, 556 (Mo.App.1983).[2]

The elements of prima facie tort are (1) an intentional lawful act by the defendant; (2) an intent to cause injury to the plaintiff; (3) injury to the plaintiff and (4) an absence of any justification or an insufficient justification for the defendant's act. *Porter v. Crawford & Co.,* 611 S.W.2d 265, 268 (Mo.1981). The "intent to cause injury" is an intent to cause harm to the plaintiff "not merely an intent to do the act purportedly resulting in the claimed injury". *Lundberg v. Prudential Insurance Co.,* 661 S.W.2d 667, 670 (Mo.App. 1983). This definition of intent contains aspects of malice, perhaps a wicked or evil motive. Whatever the level of "malicious intent" plaintiff had to show, plaintiff failed to show it. He merely showed defendants intended to place the ads.

Plaintiff's testimony he believed defendants were trying to put him out of business is a bald conclusion and, thus, does not prove defendants intended to do so. Nor, as plaintiff argues, does the fact defendants placed the coupon ads at or near cost in a local paper in plaintiff's market area compel an inference defendants acted with the intent to injure plaintiff. This circumstantial evidence, when considered with defendants' admitted legitimate business reasons for placing the ads, is insufficient to show intent to injure. *See, e.g., Costello v. Shelter Mutual Ins. Co.,* 697 S.W.2d 236, 239 (Mo.App.1985). "Gross speculation and conjecture cannot fill the role of a reasonable inference for the purpose of making a submissible case." *Lundberg,* 661 S.W.2d at 671 (Mo.App.1983).

Even assuming plaintiff showed the appropriate intent to injure, plaintiff would not prevail. Plaintiff's evidence fails to meet the fourth element of a prima facie tort: an absence of any justification or an insufficient justification for defendants' act.

Both explicitly and implicitly, we have followed the dictates of the Restatement in defining and applying the prima facie tort theory. The Restatement suggests that the trial court, in the first instance, should determine whether sufficient justification for defendants' act existed. To do so, the trial court balances the conflicting private interests involved as well as the societal interests. *See, e.g., Porter, supra; Bandag, supra; Lundberg, supra.* Only if this balance weighs in favor of the plaintiff is the case given to the jury to balance the "bad" motivation shown by the plaintiff against the "claimed" motivation of the defendant. *Porter, supra,* at 270.

In balancing the interests to determine whether a defendant's conduct is tortious, the trial judge uses four factors: (1) nature and seriousness of the harm to the injured party; (2) interests promoted by the actor's conduct; (3) character of means used by the actor and (4) the actor's mo-

---

**2.** "Admitting that we are profoundly dissatisfied with the concept of 'prima facie tort' because we regard it is unavoidable, we adhere to our opinion." *Id.*

tive. *Lundberg*, 661 S.W.2d at 671 (Mo. App.1983). With reference to factor (1), physical harm to person or property is weighed more heavily than emotional harm or harm to prospective pecuniary interests; with reference to factor (2), established privileges or rights of the actor are to be afforded proper weight; with reference to factor (3), conduct which offends societal concepts of fairness and morality favors liability, and, with reference to factor (4), the degree of malice motivating the actor may be so overwhelming as to tip the scales in favor of liability. *Id.*

Applying these factors to the instant case, the balance weighs in favor of defendants. Plaintiff only suffered harm to prospective pecuniary interests. The defendants have a clearly established right to advertise their goods which courts should not be quick to circumscribe. The ads themselves are not obscene or offensive. Defendants' act of placing the ads is not immoral. As the *Lundberg* court pointed out "In a society which professes to believe in the free enterprise system, profit motivation, economic self-interest, and business success are not offensive terms." *Lungberg, supra* at 671. Finally, that degree of "malice" defendants may feel toward plaintiff, a competitor, is not so overwhelming as to tip the scales in favor of liability. On the contrary, competitiveness motivated by economic self-interest and a desire for business success is merely a characteristic of our free enterprise system. Given this balance of interests, the trial judge properly directed a verdict in favor of defendants Carl Donelson and Donelson Cycles, Inc.

Judgment Affirmed.

KELLY and CRIST, JJ., concur.

## APPENDIX

### OFFER OF PROOF

MR. WITTNER: Your Honor, may I make an offer of proof now for the record?

THE COURT: Sure. You may.

MR. WITTNER: All right. The statements made by David Dicks, who has been identified by Defendant as an employee, as a commissions salesman, are statements made in the ordinary course of Mr. Dicks' employment, that employment being the sale of motorcycles. There has been testimony to the effect that there are no limitations on what a salesman can say in selling motorcycles.

Furthermore, the statements made by Mr. Dicks are not only within the scope of the employment but are admission or it should come in under the exception to the hearsay rule.

Lastly with regard to plaintiff's Exhibit 9, the transcript, it has been identified as the conversation which took place. Mr. Keido has identified it as that transcript being identical to the tape recording that he made.

And I would state that this testimony, the transcript and the tapes, taken in totality with the circumstances of the case and the evidence that has already come forward, clearly indicates that David Dicks was acting within the scope of his employment when he made statements about Gary Surdyke. And that he was attempting to further the business of Defendant, Donelson, whose business it was—was to put Gary Surdyke out of business in the Crystal City area.

I believe that these tapes and this transcript goes directly toward that issue, the issue of Donelson's intent in this case.

THE COURT: Your offer of proof will be noted; and the Court's ruling, at this time, will be identical to what it was prior to the offer of proof.