Lisa **BAKER**, n/k/a Lisa Vick,
Plaintiff–Appellant,

v.

**L.B. ECKELKAMP, Jr.; William W. Eck-
elkamp; Trustee for Judith Ann Eckel-
kamp Trust; Trustee for Susan Ellen
Eckelkamp Trust; Louis B. Eckelkamp,
Inc. and Eckelkamp Investment Co.,
Partners of the Diamond Enterprise,
Defendants–Respondents.**

No. 54225.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 15, 1988.

Mark C. Piontek, Washington, for plain-
tiff-appellant.

Gary E. Snodgrass, William M. Corrigan,
Jr., St. Louis, for defendants-respondents.

REINHARD, Judge.

Plaintiff and her family were guests at
defendants' motel. While swimming in the
motel pool, plaintiff was injured in a colli-
sion with another swimmer as she surfaced
from a dive. Plaintiff sued defendants for
negligence. At the end of plaintiff's case
on liability the trial court sustained defend-
ants' motion for a directed verdict on the
ground that plaintiff had failed to prove
"causation." We affirm.

In reviewing a verdict directed against a
plaintiff, we view the evidence and reason-
able inferences therefrom in the light most
favorable to the plaintiff and determine as
a matter of law whether the plaintiff has
made a submissible case. *E.g. Gary Sur-
dyke Yamaha, Inc. v. Donelson,* 743
S.W.2d 522, 523 (Mo.App.1987). To be sub-
missible, every element required for liabili-
ty must be predicated upon substantial evi-
dence; "liability cannot rest upon guess-
work, conjecture or speculation beyond in-
ferences reasonably to be drawn from the
evidence." *Probst v. Seyer,* 353 S.W.2d
798, 802 (Mo.1962). "The essential ele-
ments a plaintiff must prove in a personal
injury action include the duty owed, the
failure by defendant to perform that duty,
the causal connection between the defend-
ant's act or omission and plaintiff's injury,
and proof of the resulting damages."
*Hitchell v. Strauss,* 748 S.W.2d 771, 772–73
(Mo.App.1988). *See also Courtney v. Em-
mons,* 702 S.W.2d 139, 141 (Mo.App.1985).
Generally causation is a jury question. *See
George v. Howard Construction Compa-
ny,* 604 S.W.2d 685, 692 (Mo.App.1980). In
*Jackson v. Ray Kruse Construction Co.,
Inc.,* 708 S.W.2d 664 (Mo. banc 1986), our
supreme court addressed causation. The
court said, "[t]he law deals with probabili-
ties." *Id.* at 668. A cause is legally suffi-
cient if it is demonstrated to be a "substan-
tial factor" in bringing about the injury.
*Id.* at 669 n. 6. "A cause which meets the
substantial factor test is a cause in fact."
*Id.* The court referred the reader to the
Restatement (Second) of Torts, § 431 (1965)
for further explanation of the "substantial
factor" test of causation. *Id.* To be a
substantial factor, "defendant's conduct
[must have] such an effect in producing the
harm [so] as to lead reasonable men to
regard it as a cause...." Restatement
(Second) of Torts § 431 comment a (1965).

With the foregoing in mind, we review plaintiff's appeal.[1]

In her petition, plaintiff alleged that while swimming in the motel pool as its guest "she was struck by another guest who dove or was pushed into said pool ...," and that defendants were negligent in failing to supervise the pool and warn their guests of the danger of injury from collisions with others in the pool. At trial, she presented the testimony of her father, mother, and herself to establish defendants' liability. The testimony showed plaintiff and her family checked into defendants' motel on the evening of July 1, 1980, and shortly thereafter went to swim in the pool. They entered the pool area, which was fenced in, without seeing any rules or warnings regarding use of the pool. There was a sign on the gate which read "No lifeguards on duty; Swim at your own risk," but the gate was open and the sign faced the pool. The family noticed the absence of lifeguards, but decided to use the pool anyway. Plaintiff was 15 years old and an "excellent" swimmer. Plaintiff's father testified the family had previously swum in places which did not have lifeguards and that he had been to motels which had pools with lifeguards and others which did not. Asked if she would have gone swimming whether or not a lifeguard was on duty, plaintiff testified, "I'd have gone swimming anyway."

The pool was rectangular in shape with a diving board centered on the deeper, "diving" end of the pool. The other end of the pool was a shallower, swimming area. Plaintiff estimated the pool width to be 12 feet; her mother "guessed" it to be 15 feet. Some 30 persons other than plaintiff's family were in the pool that evening.

After the family had been at the pool for about an hour, plaintiff was injured. During that hour, plaintiff, her father and her sister swam and did a "little bit of diving" in the pool. According to plaintiff, she was struck in the head and shoulders by a boy as she was about to surface in the diving area after diving off the diving board. Her father testified that plaintiff "loves to swim [and] dive, and one time that she dove off the diving board and as she started to come up, right at the edge of the water, a little fellow landed on her neck or head." He said the "little fellow" weighed about 90 pounds, and was 10–12 years old. Her father testified he was in the pool about 5 to 10 feet from plaintiff when she was struck and that he was "closer than a lifeguard would have been." Plaintiff's mother testified she saw a man throw a boy on plaintiff as plaintiff was about to surface after a dive. The man apologized to plaintiff after the incident where the boy struck her.

Plaintiff testified that before the incident she had seen the man "throwing" the boy from the poolside, and that this activity did not cause her concern. She believed the man and boy had moved from where they had been to the diving area where she was hit; he had been throwing the boy "down farther from where I—where you would end up at." Her mother testified the man had been "throwing" the boy "directly straight down into the water" near the poolside, some 8 to 10 feet away from where plaintiff was injured.

Plaintiff's attorney did not appear at oral argument and his sole statement on the issue of causation in his brief was: "The jury could reasonably infer that had the Defendants supervised the pool or warned the Plaintiff of the danger involved that the accident could have been prevented." We agree with the trial court that the evidence presented falls short of creating a jury question on the issue of causation.

---

1. We note this case is not a swimming pool drowning case as discussed by Judge Blackmar writing for the majority in *Jackson:*
> This case would be characterized by Professor Wright as one of "doubtful" causation, akin to a case involving a public swimming pool in which a child drowns while the lifeguard is absent. It is extremely difficult to prove that the drowning would not have occurred if the lifeguard had been present, but it would certainly be reasonable for a jury to conclude that the presence of a lifeguard would make the chances of rescue "more likely than not."

*Jackson,* 708 S.W.2d at 667.

Plaintiff failed to present evidence from which a jury could find the absence of a lifeguard or pool supervisor was a substantial factor in causing plaintiff's injuries. No evidence was offered showing that the man or boy were guests; the duties of a lifeguard; swimming pool user etiquette; or that any of the man's prior conduct with the boy constituted horseplay or rowdiness or endangered anyone. Plaintiff did not establish the dimensions of the pool, other than its width; the extent of the "diving area"; and, more importantly, where in the "diving area" plaintiff was surfacing when she was struck. Plaintiff's mother was the only witness who testified to seeing the man "throw" the boy onto plaintiff, but she did not describe this conduct to be different from that she had previously seen. She described the previous "throwings" as dropping the boy straight down into the water. This conduct, which was seen by plaintiff, caused plaintiff no concern. When the boy landed on plaintiff her father was in the pool five to ten feet from her which he testified was "closer than a lifeguard would have been."

We conclude, as did the trial judge, that there was no evidence from which a jury could find the cause of plaintiff's injury to be defendants' failure to supervise or warn motel guests using the pool. There is no proof that anything occurred prior to the incident causing plaintiff's injuries which would have caused even the most vigilant person supervising the pool to have warned or stopped the man from throwing the boy into the pool and onto plaintiff. There was evidence from which a jury could find plaintiff's injuries were caused by the acts of third parties, but not any acts or omissions of defendants.

JUDGMENT AFFIRMED.

CRANDALL, P.J., and CRIST, J., concur.