TAYLOR, Respondent, v. WESTERN UNION TEL-
EGRAPH COMPANY, Appellant.

**St. Louis Court of Appeals, April 26, 1904.**

**TELEGRAPH COMPANIES: Delay of Message.** The penalty pro-
vided by section 1255, Revised Statutes of 1899, for delay in
transmitting a telegraph message will not be inflicted unless
the telegraph company failed "promptly and with impartiality
and good faith" to transmit the message. Where the operator
was impartial and diligent and the delay was caused by a
storm of wind and sleet, which disabled the wires, the sender
of the message could not recover the penalty.

Appeal from Montgomery Circuit Court.—*Hon. H. W.
Johnson*, Judge.

REVERSED.

*G. Pitman Smith* and *J. D. Barnett* for appellant.

(1) "If the wire was out of working order, and
that condition was brought about by no fault of the de-
fendant, but by interfering causes like those we have
referred to, which it could not by reasonable diligence
guard against, then the defendant was not guilty of
negligence for the failure to promptly transmit the dis-
patch during the existence of such conditions." De
Rutte v. Tel. Co., 1 Daly 545; Smith v. W. U. Tel. Co.,
57 Mo. App. 260. (2) This action is based on sec. 1255,
R. S., and section 1257 "is inapplicable."

*E. Rosenberger & Son* for respondent.

Under section 1255, R. S. 1899, a telegraph
company operating a telegraphic line in this State is
liable for the prescribed penalty of $200 for the failure
to promptly transmit a message received by it, with

payment of its charges therefor; it is not necessary that the failure should be due to partiality or bad faith on its part, and it must provide sufficient facilities. Burnett v. Tel. Co., 39 Mo. App. 599; Brashears v. Tel. Co., 45 Mo. App. 433; Kendall v. Tel. Co., 56 Mo. App. 192; Wood v. Tel. Co., 59 Mo. App. 236; Parker v. Tel. Co., 87 Mo. App. 553; R. S. 1899, section 1257; Smith v. Tel. Co., 57 Mo. App. 259.

### STATEMENT.

On December 16, 1902, at 7:18 p. m., plaintiff delivered to the defendant's agent at Lebanon, Missouri, the following message to be transmitted to Montgomery City, Missouri:

> "To William Reynolds,
> "Montgomery City, Missouri.
> "Leave on 12:58 to-night.
> "DR. J. J. TAYLOR."

This message was in response to two messages Taylor had received from Montgomery City informing him that his mother had died. Taylor's message did not reach Montgomery City until 12:58 a. m., December seventeenth. The distance between the two points via St. Louis, the route over which the message had to be transmitted, is about two hundred and sixty miles, and the usual time required for transmitting a telegraph message from the one point to the other is from thirty to sixty minutes. The suit was to recover the statutory penalty of two hundred dollars for delay in the transmission of the message.

The answer was a general denial, and new matter alleging the prevalence of a rain, sleet and wind storm, on December 16, 1902, and for two or three days prior thereto, which it is alleged interfered with the poles, wires, batteries, keys and other appliances causing unavoidable delay in the transmission of messages over

defendant's wires between St. Louis and Lebanon, St. Louis and Springfield, and Lebanon and Springfield. The new matter was put in issue by a reply.

For the defendant the evidence shows that on the night of the fifteenth, and morning of the sixteenth of December, sleet and rain fell between the Gasconade river and Springfield, along the line of the Frisco railroad, and on the sixteenth the defendant's wire, used for transmitting messages between St. Louis and Lebanon, was down at two points, to-wit, between Newburg and Dixon and at Hancock, and could not be used and that the same wire was down between Lebanon and Springfield; that the wires belonging to the Frisco Railroad Company could be operated with difficulty but they were not at the service of the defendant company, except by permission of the railroad company and when the business of the railroad company would admit of their use by the defendant.

Mr. Joslyn, defendant's agent and telegraph operator at Lebanon, testified that the company's wire connecting the Lebanon office with the St. Louis office was down when he received the message; that he tried to get Springfield for the purpose of getting the message through by way of that office, but failed to do so on account of the windy condition of the weather and the sleet on the wires; that all the wires were working very poorly; that the private wires of the railroad company ran to Chouteau avenue, St. Louis, and after getting the railroad company's business off his hands he induced the operator at Chouteau avenue to make connection with the defendant's St. Louis office and then sent the message over the railroad company's wire to St. Louis; that he understood the importance of the message and made an extra effort to get it through.

The message was not delayed after Joslyn got connection at St. Louis and reached Montgomery City within twenty-five or thirty minutes after its transmission

from Lebanon. It is not shown at what hour Taylor received the message from Montgomery City notifying him of the death of his mother, nor at what precise hour the wire connecting Lebanon with St. Louis was disabled, but it is shown by the evidence of Joslyn that at no time after he received the message from Taylor, during the day or the night of the sixteenth, was he able to send the message over a wire connecting Lebanon with St. Louis.

At the close of all the evidence the defendant moved the court to nonsuit the plaintiff. This the court refused to do and (under instruction) sent the case to the jury who returned a verdict for the plaintiff.

BLAND, P. J. (after stating the facts.)—It seems to us that on all the evidence plaintiff should have been nonsuited. The statute on which the action is grounded is penal, and a case to be brought within its provisions should be clearly made out by the evidence. Plaintiff made a prima facie case by showing an unusual delay in the transmission of the message, but only a prima facie case. We think this was clearly and completely overturned by the uncontradicted testimony offered by defendant, some of which was documentary, that the delay was caused by a storm of sleet and wind which disabled its wires, and the defendant can not be held responsible for the wind and sleet storm. Plaintiff tried to shake this evidence by offering evidence in rebuttal but instead of doing so gave it additional strength. The statute (section 1255, R. S. 1899) being a penal one, the penalty should not be inflicted on the defendant unless it is shown by the evidence that after receiving the message and payment for its transmission, it failed to "promptly and with impartiality and good faith" transmit it. If the wire is engaged when a message is received, this fact is, under the statute, a sufficient excuse for not sending it promptly; *a fortiori* if the

wire is down without any fault or negligence of the company, it is a good excuse for delay. The fact that the wire between St. Louis and Lebanon was down so that it could not be used, was shown by documentary evidence and by the evidence of two witnesses, and is un-.contradicted. It further shows that Joslyn, as operator, showed no partiality, acted in good faith and was diligent in procuring the transmission of the message.

Judgment reversed. *Reyburn* and *Goode, JJ.,* concur.