Ben ADELSTEIN, (Plaintiff) Appellant,

v.

.JEFFERSON BANK AND TRUST COM-
PANY, a Corporation, (Defendant)
Respondent.

No. 49957.

Supreme Court of Missouri,

Division No. 1.

April 13, 1964.

Bernard Susman, St. Louis, Melvin L. Hertzman, St. Louis, of counsel, for appellant.

James K. Cook, Schuchat, Cook & Werner, St. Louis, for defendant-respondent.

HOLMAN, Judge.

In Count I of his petition plaintiff alleged that defendant stole $2,500 from his account and maliciously refused to restore said sum upon his demand that it do so. In that count he sought actual damages in the sum of $2,500 and punitive damages in the sum of $50,000. In Count II plaintiff alleged that on October 5, 1960, defendant refused to pay a check he had drawn in the sum of $2,541.99, even though he had in excess of that amount on deposit with it subject to his check. He prayed judgment in the sum of $2,541.99 in said count. Prior to trial the court sustained defendant's motion to strike from the prayer the plea for punitive damages. The trial resulted in a verdict for defendant. Plaintiff has appealed. We have appellate jurisdiction because the amount in dispute is more than $15,000.

Plaintiff testified that his principal business was the .operation of the L S Bed and

Spring Company located at 2033 Franklin in St. Louis; that in 1958 he opened a personal account at the Jefferson Bank and Trust Company and that account was used for the transaction of both his personal and business matters. In the transaction of his business with defendant he would go to the bank once or twice a week and would usually go to the drive-in window at which Jim Fritschie was the teller; that he and Fritschie were friendly and did business on a first-name basis.

Mr. Adelstein further testified that in May 1960 he and John Hemphill, Jr., formed a corporation called the "Hemphill Wrecking Company" for the temporary purpose of wrecking certain houses for the City of St. Louis; that each of them invested approximately the same amount of money in the corporation; that the records of the company were kept in his office at the L S Bed and Spring Company; that it was his duty to keep the books of the corporation and also supervise and handle anything that had to be done in the field; that it was Hemphill's job to operate the wrecking operations; that their agreement was that neither would be paid any salary and that they would divide the profits equally; that on August 25, 1960, the wrecking operations had been completed and he and Hemphill spent the day in the office of their attorney working out a final settlement of their operations and arranging for the dissolution of the corporation; that it was agreed that Hemphill was entitled to $2,500 as his final share of the profits but that the corporate account in defendant bank on that date had a balance of only 64 cents; that a check was written on the corporate bank account for $2,500, payable to John Hemphill, Jr., which was endorsed on the back by the payee; that another check was written on plaintiff's personal account for $2,500, payable to the Hemphill Wrecking Company, which was endorsed on the back as follows: "John Hemphill, Jr., O. K. Ben Adelstein"; that when he went to the bank later that day with the two checks he intended that his personal check for $2,500 be de-

posited in the corporation account and the other check for $2,500 be cashed; that he did not intend to obtain $5,000 in cash. He further stated that at about 4:30 p.m. on that day he drove to the defendant bank, with Hemphill in the front seat with him, and drove up to the window at which Jim Fritschie was the teller; that when the teller's drawer was extended he put the two checks and a deposit slip into the drawer; that when the drawer "went in" Mr. Fritschie picked up the papers and "asked me how I wanted it and I said, 'in large bills'"; that Jim then placed a couple of rubber bands around a package of bills and placed it in the drawer; that the drawer was extended and he took the package of bills out of the drawer and tossed it to Mr. Hemphill and they drove away; that he has no recollection as to whether he received a deposit receipt but he has made a search and has been unable to find any; that he could remember no prior occasion when he failed to receive a deposit slip when he made a deposit; that he did not count the money handed to him by Mr. Fritschie.

James Fritschie testified that he was a drive-in teller for defendant bank; that the drive-in glass window has no opening, but a drawer extends and retracts for use of the customers; that he had known plaintiff for three years; that plaintiff was a regular customer and he knew him on a first-name basis and had sufficient confidence in him that for the past year he had cashed his checks without checking his account; that the account of Hemphill Wrecking Company was handled in the same manner; that on August 25, 1960, plaintiff drove up to his window and he noticed another person in the car whom he did not know but later learned was Mr. Hemphill. He stated that when the drawer was retracted there were two checks in it for $2,500 each, but no deposit slip; that he asked the plaintiff how he wanted the money and plaintiff said he wanted "as much in large bills as I had"; that he assembled a package of bills containing $5,000 and after putting two rubber bands around the package, placed it in the drawer

and extended the drawer out; that Mr. Adelstein then took the money out of the drawer and handed it directly to the gentleman seated on his right and they drove away. He further stated that the following Monday morning the bookkeeper called and advised him that there were not sufficient funds in the Hemphill Wrecking Company account to pay the check which he had cashed; that he suggested to the bookkeeper that it was probably a simple mistake and suggested that she call plaintiff; that about 20 minutes later plaintiff "called me up, and he asked me what had happened, and I told him I had cashed the two checks, but the one drawn on the Hemphill Wrecking Company was insufficient, and then at that time, he informed me that he had meant for his personal check to be deposited to the company account, in order to cover the Hemphill Wrecking Company check." Mr. Fritschie also identified the machine tape of his transactions on the day in question and it showed that two $2,500 checks were cashed at the same time, and showed only one $2,500 deposit that day which, according to other evidence, was made by Staten Island Cleaners.

On cross-examination this witness conceded that plaintiff could have placed a deposit slip in the drawer and the wind could have blown it out. However, in that connection, on redirect-examination, he stated that always in the past when the wind blew anything out of the drawer either the teller or customer saw it and "there had never been any mishap because of it."

Joseph McConnell, executive vice president of defendant bank, produced various records in connection with the two accounts heretofore mentioned and testified that withdrawals from the Hemphill Wrecking Company account were to be made upon the joint signature of plaintiff and Hemphill; that he learned of the incident in question on Monday, August 29, and that he, plaintiff, and Mr. Fritschie had a conversation about the matter at the bank at that time. "Mr. Adelstein advised me as to what had happened, and I asked him, 'where is your receipt for this deposit,' and he said 'I don't have any.' My next question was, 'where is the receipt that you got from the drive-in teller.' He said 'I don't know whether I made out a deposit or not.' He said, 'I was so mixed up and excited, I don't know whether I made one up or not.' He said 'I don't have a receipt for the deposit.' * * * At the same time I asked him what in the world happened to cause a situation like this, and he said, 'I think that Hemphill took me' and, well, that was it." Mr. McConnell further testified that on that morning, in the presence of plaintiff, he issued an order to charge the "insufficient funds" check of the corporation against plaintiff's personal account; that on October 5, 1960, the bank refused payment on a check for $2,541.99 drawn by plaintiff on his personal account because, at that time, plaintiff's balance was $41.99; that payment was refused upon another check in the amount of $2,512.56, dated October 20, 1960, drawn upon plaintiff's account, because at that time the balance in his account was $95.36.

Apparently the two checks mentioned in the preceding paragraph were written and presented in order to lay the groundwork for the present suit as plaintiff testified that he knew the $2,500 corporation check had been charged against his account and, in view of that charge, knew that when he wrote the aforementioned two checks they would not clear. Plaintiff also admitted that he had at one time reported to the police that Hemphill had taken the money—stolen over $50.00.

In rebuttal plaintiff called John Hemphill, Jr., who testified briefly. He stated that he was in the automobile with plaintiff on August 25, and that plaintiff had tossed him the package of money; that he didn't count it but took it home and gave it to his mother; that his mother told him that the package contained $2,500.

Plaintiff's main contention is that the court erred in giving Instruction No. 3 at

the request of defendant. It reads as follows:

"If you find and believe from the weight of the credible evidence that late [in] the afternoon on August 25, 1960, plaintiff (Mr. Adelstein) presented the two checks for $2,500.00 each received in evidence in this case, one check written on the account of Ben Adelstein payable to Hemphill Wrecking Company, Inc. and endorsed on the back by John Hemphill, Jr. and Ben Adelstein, and one check written by Hemphill Wrecking Company, Inc. payable to the order of John Hemphill, Jr. and endorsed on the back by John Hemphill, Jr., to defendant's teller Jim Fritschie; and

"If you find that Mr. Adelstein was Secretary-Treasurer of Hemphill Wrecking Company, Inc. and that Mr. Adelstein knew, according to the records of that company's bank balance, which he kept, that there was not sufficient money in that company's bank account to pay the aforesaid check written on the account of Hemphill Wrecking Company, Inc. for $2,500.00 unless a deposit of almost $2,500 were made to the bank account of the Hemphill Wrecking Company, Inc.; and

"If you find and believe from the weight of the credible evidence that defendant's teller Jim Fritschie cashed both of said checks and gave to Mr. Adelstein the sum of $5,000 for them; and

"If you find and believe from the weight of the credible evidence that, even though plaintiff may have intended to deposit the said check payable to Hemphill Wrecking Company, Inc. to said company's account and to have teller Jim Fritschie cash only the said check payable to John Hemphill, Jr., if you so find, and

"If you find that plaintiff knew, or should have known that defendant's teller paid him $5,000.00, if you so find, either by counting the money paid to him by said teller or by securing a deposit receipt for the $2,500 check plaintiff may have intended to deposit, if you so find; and

"If you find that plaintiff Mr. Adelstein did not count the money paid to him by said teller, and if you find that plaintiff did not receive a deposit receipt, if you so find,

"Then defendant Jefferson Bank and Trust Company had the right to charge plaintiff's personal bank account for the $2,500.00 paid to plaintiff by teller Jim Fritschie as the proceeds of the check drawn on the account of Hemphill Wrecking Company, Inc., if you so find that such money was paid to plaintiff;

"Then plaintiff is not entitled to recover and your verdict must be in favor of defendant Jefferson Bank and Trust Company."

That instruction is in accord with defendant's theory of the case which is that when it cashed the corporate check and paid the proceeds to plaintiff, plaintiff became indebted to it in the sum of $2,500 and it had the right to deduct that amount from plaintiff's personal account as a setoff against that indebtedness.

Plaintiff says that the giving of the instruction was error because there was no evidence that the money was paid to plaintiff. In that connection we note that it is admitted that plaintiff actually picked up the package of money out of the drive-in teller's drawer. What plaintiff really contends is that since the check was made payable to Hemphill and endorsed by him, and since plaintiff immediately handed the money to Hemphill upon picking it up, such could not constitute payment to plaintiff. Stated another way, plaintiff contends that he was a mere conduit through which the money passed from the bank to Hemphill. We do not agree. The check had been endorsed in blank by Hemphill and hence was payable to bearer. Section 401.034, RSMo 1959, V.A.M.S. Plaintiff had possession of the check and placed it in the drawer. When the teller asked how he wanted the money he stated (without consulting Hemphill), "in large bills." After the drawer was extended again plaintiff

picked up the money. Those are certainly sufficient facts from which a jury could reasonably have found that the money was paid to plaintiff.

It is also contended by plaintiff that the instruction is erroneous because it tells the jury, upon a finding of the facts hypothesized therein, that defendant "had the right to charge plaintiff's personal bank account for the $2,500 paid to plaintiff * * *." He contends that (under the circumstances of this case) no factual situation could have authorized defendant to make such a charge against plaintiff's personal account except the authentic order of plaintiff.

We have concluded that a finding that plaintiff received the money under the circumstances hypothesized in the instruction would make plaintiff a debtor of defendant in the amount of $2,500 and therefore defendant had the right to set off the amount of that debt against the amount in the personal account of plaintiff. The money was paid by defendant and accepted by plaintiff as the result of a mutual mistake. As stated in defendant's brief, "the mutual mistake was that of the teller and plaintiff in assuming that there were sufficient funds in the corporation account, although each had different reasons for the mistaken assumption. The teller assumed the check was good because of his confidence in and past dealings with plaintiff. Plaintiff assumed the check was good because he believed he was making a deposit to cover the check."

In a case involving the payment of a draft by mistake, this court said long ago that if "the money is paid under the impression of the truth of a fact which is untrue, it may, generally speaking, be recovered back, however careless the party paying had been in omitting to use due diligence to inquire into the facts." Koontz v. Central National Bank, 51 Mo. 275, 278. See also Bankers Trust Co. v. United States Register Co., 200 Iowa 1014, 205 N.W. 838, and Prowinsky v. Second National Bank

(Dist. of Columbia), 49 App.D.C. 363, 265 F. 1003, 12 A.L.R. 358.

■ "As a general rule a bank may look to deposits in its hands for the repayment of any indebtedness to it on the part of the depositor and may apply the debtor's deposits on his debts to the bank as they become due * * *. [S]uch right grows out of the debtor and creditor relation subsisting between bank and depositor, and finds its basis in the right of setoff, and in the application of equitable principles." 9 C.J.S. Banks and Banking § 296, pp. 614, 615. Plaintiff has cited the case of O'Grady v. Stotts City Bank, 106 Mo.App. 366, 80 S.W. 696, which holds that a bank has no right, without a depositor's consent, to apply his deposit to the payment of a check of a third person which the depositor guaranteed. That is not the situation here. However, we note that the O'Grady case approves the rule that "it is the right of the bank, in case the depositor becomes indebted to it by note *or otherwise,* and the deposit is not specially applicable to a particular purpose, or there is no express agreement to the contrary, to apply a sufficient amount thereof to the payment of any debt due and payable from the depositor to the bank." (Italics ours.) 80 S.W. 697.

■ Plaintiff also states that the instruction is erroneous because it permits the debt (overdraft) of the corporation to be charged to the personal account of a stockholder and officer thereof. That is said to be contrary to the basic principle that a corporation is a distinct entity and that stockholders are not ordinarily liable for the corporate obligations. There is no question but that the principle stated in the preceding sentence is correct. The difficulty with plaintiff's contention is that the amount here in question was not charged to plaintiff's personal account because he was a shareholder and officer of the corporation. It was so charged because he received the $2,500 when the check was cashed under the circumstances hypothesized in the instruction. This point is without merit.

**252**

In further support of his contention that the instruction is erroneous plaintiff has cited the case of Farmers State Bank v. Jones, 34 Tenn.App. 57, 232 S.W.2d 658, which holds that a bank does not have the right to apply the personal account of a partner to a partnership note. That ruling may or may not be sound, but it certainly has no application to the situation before us.

Plaintiff's final contention of error in regard to Instruction No. 3, and his entire argument supporting same, is quoted from his brief, as follows: "The inclusion in the instruction of the charge that 'if you find that plaintiff knew, or should have known that defendant's teller paid him $5,000 if you so find, either by counting the money paid to him by said teller or by securing a deposit receipt for the $2,500 check plaintiff may have intended to deposit * * * plaintiff is not entitled to recover' was erroneous, incorrect and was bound to confuse the jury, regardless of whether or not plaintiff knew that $5,000 was included in the amount handed to him by the teller. Legally the bank had no right to charge the personal account of plaintiff with the overdraft of the account." This point adds nothing to the contentions heretofore discussed. It merely reiterates the contention that defendant had no legal right to charge plaintiff's personal account with the amount of the check. This contention is overruled.

■ While Instruction No. 3 may have hypothesized more facts than was required, and should not be used as a model in future cases, it does clearly hypothesize the facts required to be found in order to justify defendant's action in charging plaintiff's account with the amount of the check. As heretofore indicated, we rule that it was not prejudicially erroneous for any of the reasons stated in the plaintiff's brief.

■ The remaining point briefed by plaintiff is that the trial court erred in striking the prayer for punitive damages from his petition. We need not determine that contention because the ruling could not be considered as prejudicial to plaintiff. This for the reason that actual damages must be found as a predicate for the recovery of punitive damages. Carnes v. Thompson, Mo.Sup., 48 S.W.2d 903; Thompson v. Hodge, Mo.App., 348 S.W.2d 11. Since the jury in this case found for defendant and, of course, allowed plaintiff no actual damages, it could not have allowed plaintiff any amount for punitive damages even if the prayer for such had not been stricken from the petition and the issue had been submitted to the jury. As stated, plaintiff could not have been prejudiced by the ruling complained of.

The judgment is affirmed.

All concur.