**LPP MORTGAGE, LTD., Appellant,**

**v.**

**MARCIN, INC., and Mark Yungeberg
and Cynthia Yungeberg,
Respondents.**

**No. WD 66551.**

Missouri Court of Appeals,
Western District.

March 6, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 1, 2007.

Application for Transfer Denied
June 26, 2007.

Martin McCormick Loring, Kansas City, MO, for Appellant.

Kenneth C. Hensley, Raymore, MO, for Respondent.

RONALD R. HOLLIGER, Presiding Judge.

LPP Mortgage, Ltd. ("LPP") appeals a judgment in favor of its mortgagors, Mark and Cynthia Yungeberg and Marcin, Inc. (collectively "Marcin") on their counterclaim for prima facie tort brought in response to LPP's suit on a secured promissory note. LPP also appeals the court's judgment on its original claim with respect to the amount of attorney fees awarded for its collection of the note. Because Marcin did not present a viable claim for prima facie tort, we reverse the judgment entered against LPP on the counterclaim. We affirm that portion of the judgment concerning LPP's attorney fees.

**Factual and Procedural Background**

When the promissory notes at the center of this case came into LPP's possession—by way of an assignment—they were already in default. Upon learning of the assignment, Marcin contacted LPP and initiated settlement discussions regarding the notes. During these negotiations, LPP requested extensive personal and corporate financial information from Marcin, who complied with such requests. A year into those negotiations, Marcin offered a lump sum payment of roughly $50,000 to settle the claim, which was for a total of roughly $700,000. LPP rejected that offer. Marcin responded with an offer of roughly $100,000 spread out over thirty years. Four months after that offer, without any further communications between the parties, LPP published a notice of foreclosure on real property that was serving as collateral on the notes. This publication forms the basis of Marcin's prima facie tort claim.

Learning of this publication, Marcin contacted LPP, and the parties agreed that LPP would refrain from pursuing foreclosure if Marcin would make a better settlement offer. LPP did refrain from publishing subsequent notices of foreclosure, and further settlement negotiations ensued. Those negotiations proved unsuccessful, and the instant litigation resulted.

In response to LPP's petition, Marcin asserted various affirmative defenses, principally relying upon a defense of fraud based on alleged misrepresentations of LPP's predecessor on the note. Marcin also filed a counter-claim for prima facie tort. At trial, the court found that Marcin failed, as a matter of law, to establish fraud as an affirmative defense and directed a verdict in the amount of $778, 754.51 in favor of LPP on its claims on the notes. The court also found that Marcin had established a submissible case of prima facie tort, which was then submitted to a jury. The jury found in favor of Marcin on that claim and awarded a total of $700,000 in compensatory and punitive damages.

On appeal, LPP asserts as error both the submission of the prima facie tort claim to the jury and the award of attor-

ney fees, which were provided for in the promissory note, and which LPP claims should have been in the amount of $121,464.

## Standard of Review

■ Whether reviewing the denial of a motion for directed verdict or a motion for judgment notwithstanding the verdict, the question before this court is whether the claimant made a submissible case. *Blue v. Harrah's N. Kansas City, LLP,* 170 S.W.3d 466, 472 (Mo.App. W.D.2005). A claimant will make a submissible case where he presents "substantial evidence for every fact essential to liability." The claimant is given the benefit, however, of every reasonable inference, and the evidence is to be viewed in the light most favorable to the claim's submission. *Id.* Whether a claimant has made a submissible case is a question of law "to be judicially resolved." *Hurlock v. Park Lane Med. Ctr.,* 709 S.W.2d 872, 880 (Mo.App. W.D. 1985).

A trial court's award of attorney fees is reviewed for abuse of discretion only. *Manfield v. Auditorium Bar & Grill, Inc.,* 965 S.W.2d 262, 268 (Mo.App. W.D.1998). Similarly, the trial court's determination of the amount of reasonable attorney fees "should not be reversed unless the award is so arbitrary or unreasonable that it indicates indifference and lack of proper judicial consideration." *Estate of Strauss v. Schaeffer,* 781 S.W.2d 274, 275 (Mo.App. E.D.1989).

## Discussion

LPP asserts that the trial court erred in submitting the prima facie tort claim to a jury, that similar error occurred with regard to the claim for punitive damages,

and that the trial court erred in awarding only $35,000 in attorney fees.

■ Before considering the merits of LPP's complaint we must first consider Marcin's argument that LPP has failed to preserve its claim in violation of Rule 70.02. Specifically, Marcin asserts that the grounds set forth in LPP's motion for directed verdict were mere boilerplate and, therefore, too general to preserve the claim it now makes on appeal. LPP's motion for directed verdict[1] asserted in part:

3. There is not sufficient evidence to make a submissible case on the counterclaim for prima facie tort.

4. There is not sufficient evidence that [LPP] acted without justification in causing the publication of a Notice of Foreclosure in May 1992, filing the lawsuit and threatening foreclosure in the future so as to make a submissible case against the Counterclaim Defendant.

Marcin contends that the claim was as general as the rejected claim in *Pope v. Pope,* 179 S.W.3d 442, 450 (Mo.App.2005). We disagree. The deficiency in *Pope* was the failure to make any reference to the argument made on appeal that there was insufficient evidence of a partnership (on which vicarious liability was claimed). *Id.* at 451–52. Here, we believe that the motion for directed verdict makes sufficiently specific reference to the issue of justification that we are asked to consider on appeal. The issue is thus preserved for our review.

## Prima Facie Tort

■ In order to make out a submissible case of prima facie tort, a claimant must

---

1. We consider the directed verdict because it is the first step necessary in the preservation steps to consider whether judgment notwithstanding the verdict should have been granted.

establish: "(1) an intentional lawful act by defendant; (2) defendant's intent to injure the plaintiff; (3) injury to the plaintiff; and (4) an absence of or insufficient justification for defendant's act."[2] *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 315 (Mo. banc 1993). Because Marcin failed to establish the fourth element of prima facie tort, the trial court's denial of a directed verdict must be reversed.[3]

■ In order to assess whether a submissible case of prima facie tort has been made out, this court, like the trial court, uses a two-step process. *Killion v. Bank Midwest, N.A.*, 987 S.W.2d 801, 808 (Mo. App. W.D.1998). The first step requires an assessment of whether the four essential elements of prima facie tort have been pled and proved, and the second step requires that the court balance the defendant's alleged bad motive against any claimed justification for its actions. *Id.* The balancing required by this second step is guided by the consideration of four factors drawn from the Restatement (Second) of Torts, Section 870 (1977). LPP claims on appeal that Marcin's action fails both of these tests. Because we find that Marcin has failed to prove a necessary element of prima facie tort, this opinion will focus on that element, and need not address the Restatement's balancing test.

The doctrine of prima facie tort is frequently said to have originated in *Aikens v. Wisconsin*, 195 U.S. 194, 25 S.Ct. 3, 49 L.Ed. 154 (1904). *Cf. Porter v. Crawford & Co.*, 611 S.W.2d 265, 269 (Mo.App. W.D. 1980) (citing both *Aikens* and a related line of Massachusetts cases). Justice Holmes there stated the doctrine in its inchoate form, describing the requisite intent to

injure and concomitant absence of justification as a kind of "disinterested malevolence." *Aikens*, 195 U.S. at 206, 25 S.Ct. 3. The level of "disinterest" involved in that case required conduct "for which no justification could be offered." *Id.* This requirement, however, has since been relaxed such that the presence of an *insufficient* justification will not defeat a claim. *See Porter*, 611 S.W.2d at 270 (collecting New York cases). Because this is the standard applicable in Missouri, a claimant must establish only the absence of any sufficient justification for the complained of action. *Nazeri*, 860 S.W.2d at 315.

■ In the present case, Marcin has failed to prove that LPP had no sufficient justification for publishing the notice of foreclosure at issue. At the time that LPP published the notice, Marcin was in default on the note secured by the relevant property and had been in default for roughly five years. The evidence presented at trial established that LPP had both a contractual and statutory right to pursue a non-judicial foreclosure. The notes at issue specifically provided that upon default, the note-holder was "empowered to sell, assign, and deliver the whole or any part of the Collateral at public or private sale." Missouri law specifically recognizes the enforceability of security agreements containing powers of sale, and further acknowledges that "foreclosure is proper and legal following default." *Killion*, 987 S.W.2d at 810; *accord* Section 443.290 RSMo (2000). The first necessary step in pursuing a non-judicial foreclosure is the publication of a notice of foreclosure. Sections 443.310–.320 RSMo (2000). The notice of foreclosure published by LPP con-

**2.** Because prima facie tort was asserted as a counter-claim, the usual roles of plaintiff and defendant are reversed in the present case. For purposes of analyzing that counter-claim, Marcin is treated as the plaintiff.

**3.** By not discussing the other elements we do not mean to imply that the facts satisfied any other element of a prima facie claim.

formed with these statutory requirements. Marcin was admittedly in default on the notes, and LPP was entitled to foreclose on the property.

■ Because every claim of prima facie tort is predicated on the intentional commission of a lawful act, a mere legal right to perform that act is not enough to defeat the claim. *See Nazeri*, 860 S.W.2d at 315–16. As Justice Holmes explains the doctrine, the intentional infliction of injury[4] "requires a justification if the defendant is to escape." *Aikens*, 195 U.S. at 204, 25 S.Ct. 3. A valid business interest will generally provide sufficient justification to defeat a claim for prima facie tort. *See Rigby Corp. v. Boatmen's Bank & Trust Co.*, 713 S.W.2d 517, 545 (Mo.App. W.D. 1986). In the present case, LPP's actions were attempts to collect on the defaulted note. As such, those actions were justified to the extent that LPP " 'had a valid business interest to protect.' " *Id.* (quoting *Luxonomy Cars, Inc. v. Citibank, N.A.*, 65 A.D.2d 549, 408 N.Y.S.2d 951, 954 (N.Y.App.Div.1978)).

Marcin, however, argues that LPP's actions and inactions before and after the publication of the notice of foreclosure somehow negate LPP's claimed justification. Those actions include requesting "extensive financial information" from Marcin prior to publication of the notice of foreclosure, publishing that notice without first rejecting Marcin's second settlement offer, and withdrawing further publication of the notice after Marcin made a third settlement offer. Marcin argues that these actions demonstrate that LPP's claimed justification for publishing the notice is pretextual.

In addition to being unsupported by the evidence,[5] this argument seriously misapprehends the fourth element of prima facie tort. That element requires that Marcin establish the absence of any sufficient justification. Instead, Marcin alleges that although a sufficient justification existed, LPP was acting in furtherance of some other purpose. The formulation of prima facie tort inherent in this argument would render the fourth element thereof mere surplusage.

■ Since every well-pled claim of prima facie tort will allege an intent to injure, an alternative purpose for acting is inherent in every such claim. Were the alleged intent to injure capable of defeating an otherwise sufficient justification, prima facie tort claimants would bear no burden of proof regarding absence of justification. This is not the law. In order to make a submissible claim, claimants in prima facie tort must "demonstrate that they have substantial evidence on each of the four elements." *Killion*, 987 S.W.2d at 808; *see also Nazeri*, 860 S.W.2d at 315 (noting that prima facie tort "is a particular and limited theory of recovery with specific elements, as any other tort"). Having failed to offer any evidence that LPP lacked sufficient justification for its actions, Marcin has not established a submissible claim of prima facie tort, and the trial court's denial of its motion for judgment notwithstanding the verdict must be reversed.

---

4. This opinion assumes, without so deciding, that Marcin established an intent to injure.

5. None of LPP's actions seem to have been inconsistent with LPP's valid business interests. All of those actions were arguably related to LPP's efforts to collect the outstanding debt, to assess Marcin's ability to pay that debt or to collect whatever portion thereof proved collectible. This would suggest the rather strong probability that LPP's actions were not necessarily motivated by an intent to injure Marcin, but this court need not, and therefore does not, reach that question.

Because punitive damages are not available in the absence of actual damages, this opinion need not fully address LPP's claim regarding the submissibility of punitive damages. *See Adelstein v. Jefferson Bank & Trust Co.*, 377 S.W.2d 247, 252 (Mo. 1964). To the extent that actual damages could not be assessed in the absence of a submissible prima facie tort claim, the award of punitive damages must also be reversed.

### Attorney Fees

■ A trial court award of attorney fees is reviewed only for a clear abuse of discretion. *Estate of Strauss*, 781 S.W.2d at 275. An award thereof will be reversed only upon a showing that it is "so arbitrary or unreasonable that it indicates indifference and lack of proper judicial consideration." *Id.* In awarding attorney fees, trial courts "should consider the time spent, nature and character of services rendered, nature and importance of the subject matter, degree of responsibility imposed on the attorney, value of property or money involved, degree of professional ability required and the result." *In re Alcolac, Inc., Litigation*, 945 S.W.2d 459, 461 (Mo.App. W.D.1997). Since trial courts are considered to be experts on the issue of attorney fees, no evidence is necessary to support an award thereof. *Estate of Strauss*, 781 S.W.2d at 275.

The question before this court is, therefore, whether the trial court abused its discretion in awarding $35,000. We find no basis in the record to meaningfully review the reasonableness of LPP's claimed attorney fees. The evidentiary record is, therefore, insufficient to establish that the trial court award was arbitrary or unreasonable.[6]

■ LPP directs this court to a document marked as "Plaintiff's Exhibit 13," which lists the principal and interest due on the loans involved in the underlying suit and the legal fees paid to two law firms.[7] Three lines at the bottom of that exhibit represent that $13,425.30, and $98,829.91 were paid to the respective law firms, and that $9,208.85 was incurred in expenses. These figures are then tallied on a fourth line, listing $121,464.06 in total fees and expenses. At trial, Mark Yungeberg was cross-examined regarding LPP's damage calculations in the original collection action. Toward the end of that cross-examination, the following exchange took place:

Q: Okay. Now, let me ask you this question, sir, a very specific question. With respect to the attorney's fees that are stated here totaling 121,000, it's true, sir, you have no basis for disputing, do you, that that amount is the amount that has actually been incurred by Plaintiff, LPP Mortgage, for attorney's fees and expenses?

A: I have no way of knowing.

Based on the available record, it would appear that no other evidence was offered that would have allowed the trial court to assess the reasonableness of the claimed attorney fees. There was no evidence of the amount of time expended by attorneys for LPP or the hourly rates. While it is true that the trial court requires no evidence in setting the amount of reasonable

---

6. At trial, no findings of fact or conclusions of law relevant to the award of attorney fees were requested by the parties or made by the trial court. We must therefore assume that all fact questions were resolved in accordance with the result reached. Rule 73.01(c).

7. There is no indication in the transcript that this exhibit was ever offered into evidence. The testimony quoted herein, however, was received regarding the relevant contents of the exhibit.

attorney fees, *see Estate of Strauss,* 781 S.W.2d at 275, in the absence of such evidence, this court cannot convict the trial court of an abuse of discretion in its determination of what attorney fees are reasonable. We thus discern no basis for concluding that the trial court abused its discretion in fixing the amount thereof at $35,000.

### Conclusion

The judgment in favor of Marcin on its claims for prima facie tort and punitive damages is reversed, and the award of attorney fees is affirmed.

PAUL M. SPINDEN, Judge, and LISA WHITE HARDWICK, Judge, concur.