

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| TARYN PIERS, | ) | |
| | ) | |
| Respondent, | ) | |
| v. | ) | WD85939 |
| | ) | |
| | ) | OPINION FILED: |
| STATE OF MISSOURI | ) | April 9, 2024 |
| DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Buchanan County, Missouri
The Honorable David L. Bolander, Judge**

**Before Division Two:** Anthony Rex Gabbert, Presiding Judge, and
Karen King Mitchell and Janet Sutton, Judges

The Missouri Department of Corrections (DOC) appeals from a judgment entered

against it on Taryn Piers's claim of retaliation under the Missouri Human Rights Act

(MHRA). DOC raises three points on appeal, two of which claim error based on the

denial of its motion for judgment notwithstanding the verdict (JNOV), which claimed

trial court error in submitting Piers's claim to the jury because (1) Piers failed to prove

DOC took any materially adverse action in transferring her to a new job; and (2) Piers

failed to prove harm resulting from the job transfer. In its third point, DOC claims the

trial court erred in allowing a previously undisclosed witness to testify at trial.[1]  Finding

that DOC failed to preserve its first two points and finding no error in the third, we

affirm.

## Background[2]

Piers filed an employment-discrimination action under the MHRA against DOC

alleging retaliation, associational disability discrimination, and sex discrimination.

Following an August 2022 trial, the jury returned a verdict in DOC's favor on the counts

of associational disability discrimination and sex discrimination and in Piers's favor on

her retaliation claim.  The trial court entered judgment on September 14, 2022, for Piers

in the amount of $500,000 in non-economic damages, $270,507.50 in attorneys' fees, and

$9,366.89 in costs.  DOC then filed its Motion for JNOV or, in the Alternative, a New

Trial, or Remittitur on October 14, 2022.  The trial court denied the motion on

December 17, 2022.

---

[1] We note that none of DOC's three Points Relied On identifies the precise ruling by the trial court that is the basis of DOC's appeal, as required by Rule 84.04(d)(1)(A). Points I and II concern the denial of DOC's motion for directed verdict, not, as identified in the point relied on, the denial of its motion for JNOV.  Point III concerns the overruling of DOC's objection to testimony.  All Rule references are to the Missouri Supreme Court Rules (2023).

[2] In an appeal from the denial of a directed verdict or JNOV, "this Court considers the evidence and all reasonable inferences drawn therefrom in the light most favorable to the plaintiff and disregards all contrary evidence and inferences." *Delacroix v. Doncasters, Inc.*, 407 S.W.3d 13, 26 (Mo. App. E.D. 2013).  "The jury's verdict will be reversed only if there is a complete absence of probative facts to support the jury's conclusion." *Id.* (quoting *Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010)).

Piers was employed by DOC in 2011 as a Probation and Parole Officer I. Her goal from the beginning of her employment with DOC was to work as a Drug Court Officer. She testified that she was the child of an addict and wanted to witness how Drug Court programs help addicts. In 2018, she became a Drug Court Officer, which she found "more fulfilling" than her job as a "regular" probation officer, with a higher level of satisfaction from seeing clients complete the programs. She took on a full Drug Court caseload from a retiring Drug Court Officer. The person to whom she initially reported at Drug Court had no complaints or concerns about Piers's work. Things changed when a new supervisor (Supervisor) took over.

Since her start date with DOC in 2011, Piers had used Family and Medical Leave Act (FMLA) leave to care for her son and sought approval to use flex time to put in 40 hours per week. Piers's son, nineteen years old at the time of trial, was diagnosed as an infant with cystic fibrosis, a disease requiring regular care. Approval to use flex time was granted previously, but Supervisor denied Piers's requests if the reason was to care for her son. When she informed Supervisor of the need to take FMLA leave, Supervisor would say things like "what's wrong with him now?" and roll her eyes. Piers was accused of "stealing" from the state and not reporting all of her leave time. In early 2019, concerned that her son was depressed over his illness, Piers took FMLA leave and acknowledged that it inconvenienced her Drug Court coworkers.

Supervisor put several written notes of performance violations in Piers's file. One was based on a photograph taken by another employee, causing Supervisor to accuse Piers of violating DOC's dress code by wearing a skirt that was too short. Piers testified

3

that she had worn the same clothing "hundreds of times" before without issue and was never shown the photograph. Supervisor issued another note to Piers's file when Piers arrived late due to a medical issue with her son. Later that day, Piers worked after hours to finish a project needed by a judge the next day, even though Supervisor had denied Piers's request to work late.

On July 19, 2019, Piers emailed a DOC District Administrator (to whom Supervisor reported) to report that Supervisor was subjecting Piers to a hostile work environment. On October 8, 2019, a "conflict resolution meeting" took place, attended by Piers, Supervisor, and two DOC employees holding the position of Civil Rights Officer II. After that meeting, Piers emailed one of the Civil Rights Officer II employees to ask for a chance to speak in person about her discrimination complaint and her fear of retaliation. In response, she was asked to provide written documentation of the instances of discrimination. Piers declined, fearing that a written response would lead to retaliation.

On November 14, 2019, Supervisor called Piers into Supervisor's office, told Piers to "get [her] stuff out" and ordered her to "leave immediately" because Piers was being transferred by DOC. The transfer was to DOC's Community Supervision Center, in a different location in St. Joseph from the Drug Court. On November 22, 2019, the District Administrator informally announced that a Drug Court Officer position was available. Piers emailed the District Administrator asking whether she could apply for the position, but he did not respond.

Piers was upset, embarrassed, and in shock at the loss of a job she loved, and she was unhappy with the work required at the Community Supervision Center. In addition, although her salary did not decrease, her caseload almost doubled at the new job, and DOC assigned her older cases with a significant backlog of clients and reports needing attention.

At trial, after Piers had testified, the court allowed Piers's mother (Mother) to testify, although Piers had not included Mother on her witness list or disclosed Mother in responses to DOC's interrogatories (to which Piers's counsel had responded with objections).[3] The jury found in favor of Piers on her retaliation claim and in favor of DOC on her claims of sex discrimination and associational disability discrimination.

## Analysis

DOC appeals from the judgment entered against it on Piers's claim of retaliation under the MHRA, § 213.070.1(2).[4] DOC raises three points on appeal: (1)-(2) that the trial court erred in denying DOC's motion for JNOV because Piers failed to prove DOC took materially adverse action in transferring her to a new job or that the transfer resulted in harm to her; and (3) that the trial court erred in allowing Piers to present a witness at trial who was not disclosed to DOC in discovery.

---

[3] The interrogatories and responses are not part of the record on appeal.
[4] All statutory references are to the Missouri Revised Statutes (Supp. 2022).

**Points I and II**

**Preservation of Error**

Piers argues that, pursuant to Rule 72.01(a), DOC failed to preserve its claims of error in its motion for directed verdict at the close of all the evidence. We agree. "Rule 72.01 authorizes motions for directed verdict and for judgment notwithstanding the verdict." *Pope v. Pope*, 179 S.W.3d 442, 451 (Mo. App. W.D. 2005) (en banc). Under Rule 72.01(a), a motion for directed verdict must "state the specific grounds therefor." Under Rule 72.01(b), a party may move for JNOV only if it has previously moved for a directed verdict. The purpose of a JNOV motion is "to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the motion for a directed verdict," thus "a motion for directed verdict that does not comply with . . . Rule 72.01(a) neither presents a basis for relief in the trial court nor preserves the issue in the appellate court." *Pope*, 179 S.W.3d at 451 (quoting *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 163 (Mo. App. W.D. 1997), *overruled on other grounds by Badahman v. Catering St. Louis*, 395 S.W.3d 29, 40 (Mo. banc 2013)).

DOC's directed verdict motion did not comply with the requirements of Rule 72.01(a). DOC orally moved[5] for directed verdict both at the close of Piers's evidence and at the close of all evidence. But in moving at the close of Piers's evidence, DOC stated only that the evidence was "insufficient to establish sex discrimination, disability discrimination, or retaliation" and gave no specifics about which elements of

---

[5] The record contains no reference to any written motions for directed verdict.

6

those claims failed or why. In moving at the close of all the evidence, DOC stated no additional grounds and simply "renewed" its earlier motion for directed verdict. When the court raised the possibility of argument, DOC stated that it was not needed. The court denied both motions on the record immediately after they were made. DOC's motion for JNOV was more specific, identifying the claims raised now on appeal and their factual basis: that Piers failed to prove any adverse employment action or resulting damages in being transferred to a different job because there had been no change in her title, pay, or supervisor.

"Where an insufficient motion for directed verdict has been made, a subsequent post-verdict motion is without basis and preserves nothing for review." *Pope*, 179 S.W.3d at 451. The motion for JNOV is simply a request "to have judgment entered *in accordance with the motion for directed verdict.*" Rule 72.01(b) (emphasis added). In *Pope*, the defendant's motion for directed verdict failed to preserve error because it contained only "boilerplate generalities" about insufficient evidence of duty and causation to prove a claim of negligence, whereas its JNOV motion (and appeal) claimed a failure of evidence to support the formation of a partnership, which was the basis for a theory of vicarious liability for the direct negligence of appellant's partner and the focus of his appeal. *Id.* at 452 (noting that when the court "expressly invited" defendant to elaborate on his grounds for directed verdict, he declined to do so). The *Pope* court recognized that Missouri's court of appeals had similarly rejected "boilerplate generalities" as a basis for preserving issues for appeal, citing several cases involving

7

motions similar to DOC's in substance.[6] *See id*. at 452-54. Similarly, a motion that identified the claim but included only general allegations of insufficient evidence in a wrongful death case did not preserve error for appellate review. *Mansfield v. Horner*, 443 S.W.3d 627, 638-39 (Mo. App. W.D. 2014) (holding that a motion claiming "plaintiffs' failure to provide sufficient evidence to prove their claims of negligence" preserved nothing for appellate review and finding the motion even "less specific" than the deficient *Pope* motion). The *Pope* court also rejected the suggestion that a more specific JNOV motion could cure a deficient directed verdict motion. 179 S.W.3d at 459.

The standard for compliance with Rule 72.01, however, is not "demanding." *Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W.3d 647, 654 (Mo. banc 2019). If the directed verdict motion identifies the specific element of a claim that the movant claims fails due to insufficient evidence and that same element is presented as the basis for error on appeal, it may satisfy Rule 72.01. *See, e.g., Sanders v. Ahmed*, 364 S.W.3d 195, 208 (Mo. banc 2012). But if the motion identifies only the failure "to satisfy all of the necessary elements of [the claim]," it will not. *Tharp*, 587 S.W.3d at 654. For example, in a medical malpractice case involving the issue of "but for" causation on appeal, a motion for directed verdict based on failure to show "negligent causation" was sufficient to preserve the issue. *Sanders*, 364 S.W.3d at 208 (noting that the motion

---

[6] For example, in *Kincaid Enterprises, Inc. v. Porter*, 812 S.W.2d 892, 895 (Mo. App. W.D. 1991), the directed verdict motion asserted only that the "evidence fails to establish or prove a *prima facie* case against the Defendant"; in *Dierker Associates, D.C., P.C. v. Gillis*, 859 S.W.2d 737, 743 (Mo. App. E.D. 1993), the directed verdict motion was simply "for a directed verdict in favor of Plaintiff on all counts in Plaintiff's petition and all counts in Defendant's counterclaim."

could have been more specific when Missouri medical malpractice claims require proof of both "but for" and proximate causation). And in an appeal involving a prima facie tort claim, a directed verdict motion was held sufficient because it specifically referred to insufficient evidence that a mortgagee acted "without justification" in publishing a foreclosure notice, when lack of justification (an element of prima facie tort) was the specific issue on appeal. *LPP Mortg., Ltd. v. Marcin, Inc.*, 224 S.W.3d 50, 53-54 (Mo. App. W.D. 2007).

DOC's motion for directed verdict at the close of Piers's case in chief stated only that there was insufficient evidence to prove any of Piers's three MHRA claims, thus containing only "boilerplate" language as rejected in *Pope*. No specifics were given about which element(s) of the three claims failed or why.[7] Objections at trial must be specific enough to allow "the opponent an opportunity to correct the error *and the court to correctly rule on it*." *Morphis v. Tracker Marine, LLC*, 640 S.W.3d 481, 483 (Mo. App. S.D. 2022) (emphasis added) (quoting *State v. Goins*, 306 S.W.3d 639, 646 (Mo.

---

[7] At least ten potential elements (not counting damages) might have supported DOC's motion. A prima facie retaliation claim under § 213.070.1(2) requires proof of three elements: "(1) [plaintiff] complained of discrimination; (2) the [employer] took adverse action against [her]; and (3) a causal relationship existed between the complaint and the adverse action." *Eivins v. Mo. Dep't of Corr.*, 636 S.W.3d 155, 180 (Mo. App. W.D. 2021). Piers's sex discrimination claim under § 213.055.1(1)(a) required proof of four elements: "(1) [she] was a member of a protected class; (2) [she] was qualified to perform the job; (3) [she] suffered an adverse employment action; and (4) [she] was treated differently from other similarly situated employees of the opposite sex." *Lampley v. Mo. Comm'n on Hum. Rts.*, 570 S.W.3d 16, 24 (Mo. banc 2019). Her claim of associational disability discrimination required proof of at least three elements: that her son suffered from a "disability" as defined in § 213.010(5) and that, under § 213.070.1(4), DOC discriminated against her and did so "because of [her] association with any person protected by this chapter."

9

App. S.D. 2010)).  The trial court was not obligated to review the record to determine the basis for DOC's directed verdict motion, nor are we obligated to "comb the record in search of facts to support an appellant's claim of error, or demonstrate it is properly preserved for appellate review."  *Porter v. Santander Consumer USA, Inc.*, 590 S.W.3d 356, 358 (Mo. App. E.D. 2019).

Moreover, like the movant in *Pope*, DOC declined to elaborate or offer any support for the motion when invited by the court to present argument.  An adequate motion for directed verdict is not simply a *pro forma* prerequisite to the filing of post-trial motions, such that the motion's bare generalities will suffice to preserve claims of insufficient evidence simply because the motion is presented to the court that has presided over the evidence.  An argument that the requirement for a motion for directed verdict is merely *pro forma* fails under the analysis in *Pope* and was explicitly rejected in *Johnson v. Allstate Indemnity Co.*, 278 S.W.3d 228, 232 (Mo. App. E.D. 2009) (where appellant unsuccessfully argued for "liberal" construction of its directed verdict motion "because its basis was apparent and the trial court was aware of its position at trial").  DOC's motion, stating only that Piers's claims failed due to insufficient evidence, is similar to the *Mansfield* motion in providing even fewer specifics than the motion rejected in *Pope*.  Because DOC's motion for directed verdict provided no specifics, it failed to preserve for appellate review the issues presented in its JNOV motion.

DOC has not asked for a plain error review, and we will not undertake one.  Plain error review supports a reversal "only in those situations when the injustice of the error is so egregious as to weaken the very foundation of the process and seriously undermine

confidence in the outcome of the case." *Penzel Constr. Co. v. Jackson R-2 Sch. Dist.*, 635 S.W.3d 109, 132-33 (Mo. App. E.D. 2021) (quoting *Atkinson v. Corson*, 289 S.W.3d 269, 276-77 (Mo. App. W.D. 2009)).  We are not faced with that situation here.  Points I and II are denied.

**Point III**

In its third point, DOC argues that the court erred in allowing Mother's testimony because Mother was not identified before trial as a witness and, therefore, the court erred in denying DOC's motion for new trial on that basis.[8]  We disagree.

The decision to admit or exclude evidence at trial "lies within the sound discretion of the trial court." *Mitchell v. Kardesch*, 313 S.W.3d 667, 674-75 (Mo. banc 2010) (quoting *Nelson v. Waxman*, 9 S.W.3d 601, 603 (Mo. banc 2000)).  The trial court's "[d]iscretionary rulings are presumed correct and the appellant has the burden of proving that there has been error." *Tate v. Dierks*, 608 S.W.3d 799, 803 (Mo. App. W.D. 2020). To prove reversible error, the appellant must show both an abuse of discretion and prejudice. *Shuttlewagon, Inc. v. Higgins*, 628 S.W.3d 185, 200 (Mo. App. W.D. 2021). An error is prejudicial only if it "caused outcome-determinative prejudice materially affecting the merits of the action." *Mansil v. Midwest Emergency Med. Servs., P.C.*, 554 S.W.3d 471, 475 (Mo. App. W.D. 2018).

---

[8] We find DOC's third Point Relied On marginally sufficient under Rule 72.01, although it does not specify the actual error (in overruling DOC's objection to Mother's testimony) and it fails to mention in its preservation statement that it objected to Mother's testimony during trial, which is required to preserve the issue in addition to raising it in a post-trial motion.

We do not decide "whether the evidence was admissible or should have been excluded, [but] whether the trial court abused its discretion in admitting or excluding the evidence." *Ostermeier v. Prime Props. Invs. Inc.*, 589 S.W.3d 1, 10 (Mo. App. W.D. 2019). The circuit court has "broad leeway in choosing to admit evidence"; it abuses its discretion only if the decision "is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Ordinola v. Univ. Physician Assocs.*, 625 S.W.3d 445, 452 (Mo. banc 2021) (quoting *Mitchell*, 313 S.W.3d at 675) (noting the trial court's "lengthy and detailed consideration" of the issue before exercising proper discretion in the admission of evidence).

DOC appears to argue that the trial court had no choice but to exclude the evidence when it did not order a recess or continuance for the purpose of allowing discovery of a "surprise witness," citing the following language from *Ford v. Ford Motor Co.*, 585 S.W.3d 317, 329 (Mo. App. W.D. 2019) (finding no abuse of discretion in excluding the witness's testimony):

> [I]n cases where a party is surprised and prejudice could have resulted [from a party's failure to disclose a witness], the [trial] court will have to determine, in its discretion, whether to exclude the evidence, or to continue the case, or whether under some circumstances it would be sufficient to recess the case long enough to permit the complaining party to make necessary inquiry and investigation.

*Id.* (quoting *Laws v. City of Wellston*, 435 S.W.2d 370, 375 (Mo. 1968). DOC distorts the meaning of the requirement that the trial court "determine . . . whether to exclude the evidence," a determination which clearly can go either way.

12

"The trial court is vested with broad discretion *to admit or reject* testimony of a previously undisclosed witness whose identity may have been requested by interrogatory, and this court reviews only for abuse of that discretion." *Johnson v. Nat'l Super Mkts., Inc.*, 710 S.W.2d 455, 456 (Mo. App. E.D. 1986) (emphasis added).  We reject any fanciful interpretation of *Ford* that would force the trial court to exclude the witness unless it imposed a trial delay (through recess or continuance) that, as here, the objecting party did not even request.

Although the parties dispute when the obligation arose to disclose Mother as a potential witness,[9] we are concerned only with whether the court abused its discretion in allowing her testimony.  For context, we note that seven pages of the trial transcript were needed to record the court's consideration of DOC's objection to Mother's testimony, in two separate discussions with counsel.  During the first discussion, Piers's counsel stated that DOC's counsel was notified by email, two days before Mother testified, that Piers intended to call Mother as a witness regarding "how [Piers] has been affected by what happened" at DOC.  DOC stated that Mother was not identified in that email and that, as a result, DOC had had no opportunity to depose Mother.[10]  DOC's objection was that Mother had not been previously disclosed in response to an interrogatory asking Piers to "identify all

---

[9] The trial court made no finding on this point, and we will not attempt to do so, as the documentary evidence is not part of the record.

[10] The email is not part of the record on appeal, and the trial court made no findings as to when the witness was disclosed to DOC.  On the first day of trial, however, Mother was identified in voir dire questioning as a witness Piers intended to call.

13

persons with knowledge related to each element of damages you claim to have suffered," to which Piers had objected. During the second discussion with counsel, the trial court noted that DOC had not "followed up" on Piers's objection (such as by seeking the court's intervention under Rule 61.01). The court then decided to allow Mother's testimony. At that point, DOC did not ask for a recess to speak with or depose Mother before she took the stand, nor did it ask for a continuance.

Mother then testified about the benefits of Drug Court for addicts, the difficulties Piers encountered in caring for her son, and the effect on Piers of the job transfer out of Drug Court. All of this testimony was cumulative to evidence already presented by Piers. It was not new information for the jury except to the extent it came from a different witness and provided that witness's reactions to the events Piers had already described.

We see no abuse of discretion or outcome-determinative prejudice resulting from the decision to allow Mother to testify. Even if we assume that DOC was surprised when Piers called Mother as a witness, that surprise did not cause DOC to ask the court for additional time to speak with or depose Mother. Although DOC objected several times to potential hearsay in Mother's testimony,[11] it raised no objection to its substance otherwise or to its cumulative nature. We find no abuse of discretion in allowing Mother

---

[11] DOC does not argue that the testimony should have been excluded based on the hearsay objections.

14

to testify.  We also find no support for a finding of outcome-determinative prejudice to DOC when Mother's testimony was cumulative to testimony already given.

Point III is denied.

## Conclusion

DOC failed to preserve error by the trial court in denying DOC's motions for directed verdict or JNOV based on insufficiency of evidence, and DOC failed to show error by the trial court in overruling DOC's objection to testimony.  The judgment is affirmed.[12]

Karen King Mitchell, Judge

Anthony Rex Gabbert, Presiding Judge, and Janet Sutton, Judge, concur.

---

[12] Piers's Motion for Attorneys' Fees for Post-Trial Motions and Appeal, filed March 12, 2024, pursuant to § 213.111.2, is granted by separate order; we remand to the trial court for the purpose of determining a reasonable award of attorneys' fees for this appeal.